THE UNION MUTUAL ACCIDENT ASSOCIATION

*v.*

MINNA FROHARD.

*Filed at Ottawa October 31, 1890.*

1. INSURANCE—*life insurance policy—rule of construction.* The words selected and used by a life insurance corporation in its policy or contract with the assured, are to be interpreted most strongly against the company. At all events, they are to be construed according to their common and literal meaning, in favor of the insured.

2. SAME—*accident certificate—injury in an "occupation" other than that specified.* The by-laws of a mutual benefit accident association provided for the payment to the beneficiaries of certain sums on the death of members, ranging from $5000 to $500, according to the occupation of the member. A member took a certificate as a merchant, which called for $5000 on his death. He was killed from an accidental shot while hunting for recreation. The sum paid on the death of a hunter was only $500. It was provided in the by-laws, that any member receiving an injury "while engaged, temporarily or otherwise, in another occupation more hazardous than the one in which he was engaged when insured, he or his beneficiary shall be entitled to receive only such indemnity as provided for in the class or occupation in which he is engaged at the time of the injury:" *Held,* that the word "occupation," as found in the by-laws, had reference to the vocation, profession, trade or calling in which the assured was engaged for hire or profit, and did

not preclude him from the performance of acts and duties which were simply incidents connected with the daily life of men in any and all pursuits, and that the beneficiary was entitled to $5000.

3. SAME—*accident while engaged in "any act or occupation" not within the terms of the certificate.* In the same certificate it was stipulated "that in the event of the member being either fatally injured or otherwise disabled while engaged, temporarily or otherwise, in any act or occupation classed as more hazardous than the one in which he is accepted, according to the classification given by the rates and by-laws of this association, * * * then an amount shall be paid equal to the rate of the occupation in which the member is engaged when receiving the injury, and such amount shall be payment in full:" *Held,* that the words "in any act," in the clause above, did not give the certificate any different meaning than it would have without them; and the fact that the member lost his life by an accident while hunting for recreation, did not reduce the sum agreed to be paid from that therein provided.

4. SAME—*accident beneficiary—amount to be paid—cost of collecting assessments.* The by-laws of a mutual accident association provided, that on the death of a member leaving a liability on it, the secretary should make an assessment of two dollars upon each of its members belonging at the time of the death, if there should not be enough money in the treasury to discharge such liability, and that such sum, less ten per cent for expenses, should be paid to the beneficiary in full: *Held,* that the amount due a beneficiary is, primarily, payable out of "moneys in the treasury," and if the sum in the treasury is not sufficient to pay the full amount of the claim, then an assessment of two dollars upon each member is to be made and collected, and if this, when collected, is sufficient to pay both the expenses of collection and the amount of the claim, then the beneficiary is to be paid in full, otherwise he is entitled to what is left after deducting the ten per cent.

5. SAME—*relief to beneficiary—character and extent.* Where it appeared that the officers of a mutual insurance company might, by the levy of two dollars upon each of its members, as it was their duty to do, have paid a certificate given to a member, but that they wrongfully refused to make such assessment until it was doubtful whether enough could be realized thereby, a court of equity, in its decree in favor of the beneficiary, directed the corporation and its officers to levy and collect an assessment of two dollars per member, and pay the same to such beneficiary, and decreed that such company and its officers should pay any deficiency there might be in the collection of the assessments.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county.; the Hon. M. F. TULEY, Judge, presiding.

Mr. JOHN M. HAMILTON, and Mr. CHARLES C. GILBERT, for the appellant.

Messrs. HAMLINE & SCOTT, for the appellee:

Engaging in an act which is, or may be at times, engaged in by men of any occupation or profession, is not changing occupation, within the meaning of the contract. *Admrs. of Stone* v. *Casualty Co.* 34 N. J. 371; *Accident Co.* v. *Burroughs*, 69 Pa. St. 43.

To make effective a provision of the certificate limiting the amount to be paid in case the insured should be killed while engaged in any act classed as more hazardous than that in which he was insured, the association should have made a classification of acts, which it did not do. Payment, as provided both by the by-laws and certificate, was to be according to the rate of the occupation in which the member was engaged. The word "act" was not used in that connection. The contract will be construed most strongly against the association. *Aid Association* v. *Wanner*, 24 Ill. App. 363; *Admrs. of Stone* v. *Casualty Co.* 34 N. J. 371; *District Grand Lodge* v. *Cohn*, 20 Bradw. 335.

It having been stipulated that the number of members liable to contribute was more than sufficient to make up the full amount of $5000 by payment of one regular assessment, if members would all pay, the court properly decreed that the full sum be paid. *Suppiger* v. *Benefit Co.* 20 Bradw. 599.

In the absence of proof as to the amount to be realized by one assessment, and of defendant's ability to show what would have been realized from such assessment, and the plaintiff's inability to do so, it will be presumed the assessment would have realized the full amount. *O'Brien* v. *Benefit Society*, 46 Hun, 429; *Protective Union* v. *Whitt*, 36 Kan. 761; *Aid Association* v. *Wanner*, 24 Ill. App. 357; *Lueder's Exrs.* v. *Life and Annuity Co.* 12 Fed. Rep. 465; *Aid Association* v. *Riddell*, 91

Ind. 84; *Neskern* v. *Legacy Association*, 30 Minn. 406; *Freeman* v. *Benefit Society*, 42 Hun, 252.

The decree against the association for the deficiency was proper. *Swett* v. *Aid Association*, 78 Me. 541; *O'Brien* v. *Benefit Society*, 46 Hun, 426; *Benefit Association* v. *Sears*, 114 Ill. 108.

An association failing to levy an assessment is a wrongdoer, and can not take advantage of its own wrong by asserting that members might not have paid. *Freeman* v. *Benefit Society*, 42 Hun, 252.

Joining in the decree with the association "its proper officers" was not error; but had it been, appellant, not being injured thereby, can not take advantage of such error. *Hannas* v. *Hannas*, 110 Ill. 53; *Brown* v. *Miner*, 21 Ill. App. 60.

Mr. Justice Baker delivered the opinion of the Court:

On the first day of September, 1885, one John Frohard was accepted as a member of the Union Mutual Accident Association, and a certificate of insurance was issued to him. On January 26, 1887, while hunting with a gun, he accidentally shot and killed himself. The appellee, Minna Frohard, who is his widow, and the beneficiary named in the certificate, filed this bill in equity against the corporation, for the purpose of compelling it to levy an assessment of two dollars for each member of the association liable at the date of the accident, for the purpose of paying the amount of $5000 specified in the certificate, or such part thereof as might be collected on the assessment, and praying also for general relief, and that in the event there was a deficiency in the amount collected on the assessment, the corporation and its officers be decreed to pay the difference between the amount so collected and $5000. Answer and replication having been filed, the cause was heard in the circuit court of Cook county, and that court found the allegations of the bill of complaint to be true, and entered a

decree in conformity with the special prayers thereof. The decree was affirmed, on appeal, in the Appellate Court for the First District, and the record was brought to this court by a further appeal.

Section 2 of article 4 of the by-laws of appellant is as follows: "Any member who shall change his occupation to any other more hazardous than the one in which he was classified when insured, shall immediately notify the secretary of such change; and any member receiving an injury while engaged, temporarily or otherwise, in another occupation more hazardous than the one in which he was engaged when insured, he or his beneficiary shall be entitled to receive only such indemnity as provided for in the class or occupation in which he is engaged at the time of the injury,—and such shall be payment in full upon the part of the company."

Article 14 of the by-laws classified certificates of insurance against accidents, and placed them in six divisions, designated, respectively, as A, B, C, D, E and F. This classification purported to be, and was, solely upon the basis of occupations, the least hazardous occupations being placed in division "A," the extra-hazardous occupations in division "F," and other occupations in one or another of the intermediate divisions. It was provided in said article, that in the event of the death by accident of a member in division "A," a sum not exceeding $5000 should be paid, and that in the event of such death of a member of division "E," which was designated therein as "hazardous," a sum not exceeding $1000 should be paid. Merchants were placed in division "A," and hunters in division "E." A claim is also made by appellant, that subsequent to the issuance of the certificate here in controversy, and prior to the death of John Frohard, a change was made in its by-laws, whereby the amount to be paid to a beneficiary in case of the death by accident of a member in division "E" was reduced from $1000 to $500.

The certificate or policy of insurance which was issued to John Frohard provided, among other things, as follows : "That John Frohard, by occupation, profession or employment a merchant, residing at Sparta, State of Illinois, is accepted as a member in division 'A' of said association, subject to all the requirements and entitled to all the benefits thereof, as provided in the by-laws ; and that said member, in case of death occurring through external, violent and accidental injuries, is entitled to participate in the mortuary or relief fund of the association, not to exceed the amount of $5000, which sum, or such a part thereof as may be collected for that purpose by the payment of one regular assessment of two dollars ($2) for each member of the association liable at the date of the accident, shall, within sixty (60) days after sufficient proofs have been received, be paid to his wife, Minna, if surviving. * * * It is expressly stipulated and agreed, that in the event of the member being either fatally injured or otherwise disabled while engaged, temporarily or otherwise, in any act or occupation classed as more hazardous than the one in which he is accepted, according to the classification given by the rates and by-laws of this association, (or, if not specially mentioned, approximating thereto,) then an amount shall be paid equal to the rate of the occupation in which the member is engaged when receiving the injury, and such amount shall be payment in full upon the part of the association. * * * It is expressly stipulated and agreed, that this certificate is issued and accepted subject to all the provisions, conditions, limitations and exceptions herein contained or referred to."

The principal contention of appellant is, that the deceased was killed while engaged, temporarily, in an act or occupation classed as more hazardous than the one in which he was accepted, and that appellee is therefore entitled to recover only the amount provided for such hazardous risk and occupation. The contention of appellee is, that there was no change of occupation, within the meaning of the by-laws and certificate

of insurance.   The deceased was a hardware merchant.   He did not follow the occupation of a hunter for hire or profit. He was killed while engaged in the act of hunting as a recreation, and it does not appear that he had hunted with a gun on any occasion since the issuance of the policy, other than that upon which the accident occurred.

In our examination of the provisions of the by-laws and contract of insurance we will first ascertain the proper construction to be placed upon the former.

The language of section 2, as we have heretofore seen, is, "any member receiving an injury while engaged, temporarily or otherwise, in an occupation more hazardous than the one in which he was engaged when insured," etc.   Occupation is defined by lexicographers to mean, "that which occupies or engages the time or attention; the principal business of one's life; vocation; employment; calling; trade."   The classification of hazards in article 14 of the by-laws is made upon the basis of occupations.   Merchants, and those following other vocations, are placed in division "A;" grain measurers and others in division "B;" paper hangers and others in division "C;" teamsters and others in division "D;" and boatmen and others in division "E."   The by-laws in question must receive a reasonable construction.   It would be unreasonable and absurd to hold that the merchant who at one time measured a few bushels of grain, at another hung a few rolls of wall paper upon his own premises, at another drove a team of horses in a carriage or wagon, and at still another rowed a skiff for exercise or recreation, became, within the true intent and meaning of these by-laws, at these several times, a grain measurer, a paper hanger, a teamster, and a boatman, respectively.   The word "occupation," as found in these by-laws, must be held to have reference to the vocation, profession, trade or calling which the assured is engaged in for hire or for profit, and not as precluding him from the performance of acts and duties which are simply incidents connected with the

daily life of men in any or all occupations, or from engaging in mere acts of exercise, diversion or recreation. This view is not subversive of the word "temporarily," found in said section 2, for there would be full opportunity for giving force and effect to it in the event a professional man, merchant, or person in some other calling, should temporarily abandon such vocation, and for purposes of profit, or as a means of gaining a subsistence, temporarily employ himself in some more hazardous occupation.

This construction of these by-laws seems to be sustained by the authorities. In *North American Life and Accident Ins. Co.* v. *Burroughs,* 69 Pa. St. 43, there were conditions in respect to the matter of a change of occupation, and the deceased was insured as an earthenware manufacturer. He received a fatal injury from an accident which happened while he was assisting in hauling hay on a farm, while he was on a visit to his grandfather, and it was held there was no change of occupation or business, within the meaning of the policy there involved. In *Stone's Admr.* v. *United States Casualty Co.* 34 N. J. 375, the language of the condition was: "Policy holders insured under the preferred class will not be entitled to recover for injuries received in any employment or by any exposure either more hazardous in itself, or classified by the company as more hazardous, than the occupations named in the preferred class." The deceased was insured as a teacher, but while overlooking the construction of a building he was having erected, fell from a second story and was killed; and it was held the language of the condition had respect to employments, and not to individual acts. See, also, *Miller et al.* v. *Travelers' Ins. Co.* 39 Minn. 548.

It is urged, however, that the contract of insurance contains the words, "in *any act* or occupation," instead of the mere words, "in another occupation," found in the by-laws, and that the words, "while engaged, temporarily or otherwise, in an *act,*" can not be ignored, but that they have a definite and

clear meaning, and must be given legal force and effect. It is to be noted that the words used in the contract are words selected and used by the corporation itself, and are therefore to be interpreted most strongly against it, or that, at all events, they are to be construed according to their common and literal meaning, in favor of the insured.

The provision of the policy upon which is based the claim that the demand of appellee is reduced from one under division "A" to one under division "E," is not simply that if the deceased was fatally injured "while engaged, temporarily or otherwise, in any act or occupation more hazardous than the one in which he was accepted," but contains the further requirement, that the "act or occupation" that will be effective to work such reduction must be one that is "classed as more hazardous, * * * according to the classification given by the rates and by-laws of the association." These words last quoted are words of limitation, pertaining to and qualifying the terms "any act" and "occupation," as used in the contract. We have already seen that the classification of hazards made in the by-laws is predicated only upon occupations. There is not in the by-laws or in the record any classification of hazards in respect to acts,—in other words, there is no act which is classified as more or less hazardous than another, and no act which is classed as more hazardous than the occupation designated in the certificate of insurance issued to the deceased. The case, then, does not stand otherwise than it would if the word "act" were not found in the contract. The courts below properly held that the claim of appellee was under division "A," and was for $5000.

The further point is made, that the court erred in decreeing that appellant and its proper officers immediately levy one regular assessment of two dollars upon each member of the association liable to contribute at the date of the death of the deceased, to-wit, January 26, 1887, and that upon collection of such assessment, appellant and its proper officers pay the

amount realized thereon, to appellee, and in case the amount realized from such assessment shall not be sufficient to pay the full sum of $5000, that the association and its proper officers pay the difference between the said sum of $5000 and the amount so realized from such assessment, to appellee. In the event of the death of a member from a bodily injury for which a liability is imposed upon the corporation, section 1 of article 11 of its by-laws provides: "The secretary shall make assessment of two dollars upon all the members belonging at the time of happening of said injury, provided the amount in the treasury is not sufficient to pay said claim; and such amount so collected, less ten per cent for expenses, shall be paid to the beneficiary when collected, and shall be payment in full upon the part of the association, not to exceed the amount of the grade in which injury was received." The language of this by-law is awkward and ambiguous, and we must seek to give it a sensible and reasonable construction. As we understand it, the amount fixed for the grade or division in which the deceased member was at the time of the fatal injury is the amount due the beneficiary, and this is payable, primarily, out of moneys "in the treasury," and if the amount in the treasury is not sufficient to pay the full amount of the claim, then an assessment of two dollars upon each member liable is to be made and collected. If the amount so collected is sufficient to pay both the expenses of assessment and collection and the amount of the claim, then the beneficiary is to be paid that amount in full; but in the event the sum realized from the assessment is insufficient to pay both the claim and expenses, then ten per cent of the amount collected is to be retained by the corporation for expenses, and the residue, not to exceed the amount of the claim, is to be paid to the beneficiary, and is to be regarded as payment in full upon the part of the association.

Among the allegations in the bill of complaint of appellee were these, to-wit: "The amount in the treasury of said asso-

ciation was not sufficient to pay the claim of your oratrix;" and, "at the time of the death of said deceased the membership of the said association liable to contribute to the payment due on account of the death of said deceased was more than sufficient to make up the full amount of $5000, by the payment of one regular assessment of two dollars from each member of the association liable at the date of the accident." These allegations were not denied in the answer of appellant, nor was any claim made therein that an assessment made in accordance with the provisions of the certificate and by-laws would not have produced an amount of money sufficient to have paid in full both the claim of appellee and the expenses of the assessment and collection, nor was any showing whatever made therein, or by its evidence, in respect to the amount that could be collected from the members liable at the date of the death. Appellant merely tendered to appellee $500 as payment in full of her demand, and wrongfully insisted that was all she was entitled to receive under the certificate of insurance.

The undertaking in the certificate was to pay $5000, unless an assessment would not realize that amount; and at the hearing it was admitted by appellant that at the date of the death of the deceased there was not in the treasury of the association sufficient money to pay that amount to appellee, and also that at that date the number of members liable to contribute was more than sufficient to make up the full amount by the payment of one regular assessment on each member of the association liable to contribute, if the members liable would all pay said assessment. The number, names and localities of the members of the association, and their willingness and ability to pay assessments, were matters peculiarly within the knowledge of the corporation, and in respect to which appellee was necessarily unadvised, and the corporation alone had charge of the assessments, and knowledge what the expense of making and collecting an assessment would be,

and it, better than any one else, had knowledge what amount of money an assessment of two dollars on each of its members would produce. If there were facts known to appellant which indicated a probability that if an assessment had been made as provided for in the contract and by-laws all the members liable to contribute would not have paid said assessment, then it should have alleged such facts in its answer, and established them by its evidence. If the circumstances were such that an assessment would not have realized a sufficient amount to satisfy the claim of appellee in full, it was a matter of defense that should have been set up by appellant in its pleadings, and proven at the hearing. It not having done so, the averments in the bill which were not denied in the answer, and the admissions of appellant introduced in evidence at the hearing, raised a presumption as against it, it having wrongfully refused to make an assessment in conformity with its contract and duty, that had such assessment been made, enough money would have been collected thereon to have paid in full the claim of appellee.

The views we have expressed on this branch of the case seem to be in substantial conformity with those held by other courts. *Elkhart, etc., Association* v. *Houghton,* 103 Ind. 286; *Kansas Protective Union* v. *Whitt,* 36 Kan. 760; *Kansas Protective Union* v. *Gardner,* 41 id. 397; *Bentz* v. *Northwestern Aid Ass.* 40 Minn. 202; *O'Brien* v. *Home Benefit Society,* 46 Hun, 426; 4 N. Y. Supp. 275.

We may assume, then, that if the assessment had been made for the benefit of appellee at the time it should have been made by the officers of the association, in the early part of the year 1887, it would have produced $5000,— the full amount of her demand. It is at least probable that by reason of appellant's wrongful delay in making the assessment, the number of members who were at that time liable to contribute for the payment of her claim has materially decreased, and that the fund realized by an assessment made at a much later

.date will be insufficient to pay her in full. The loss, if any, occasioned by the delay, would not be owing to any fault of appellee, but would be directly traceable to the wrongful conduct of appellant. It was but equitable and just, therefore, that the decree entered in the cause required that in the event of a deficiency in the amount realized from the assessment made in conformity with the decree, appellant should pay to appellee the difference between $5000 and the amount realized.

We find no manifest error in the record, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*