## No. 9536.

## UNION HEALTH AND ACCIDENT COMPANY *v.* ANDERSON.

1. ACCIDENT POLICY—*Construed—Change of Occupation.* A mine superintendent had been called to take charge of a mine where he had never before been employed; and in order to familiarize himself with his new place of employment, he accepted service temporarily as a timber-man. He served in this new capacity for thirty days, all the time intending

presently to take charge of the mine.  *Held* there was no change of occupation within the provision of the policy, requiring notice to be given to the insurer.

2. —— *Occupation—Increased Hazard.*   Upon the question whether the deceased came to his death while engaged in an occupation of increased hazard, *Midland Casualty Company v. Anderson*, Colo. Ap., 172 Pac. 1067, followed.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

Mr. ISHAM R. HOWZE, for plaintiff in error.

Messrs. GOUDY, TWITCHELL & BURKHART and Mr. MILLARD FAIRLAMB, for defendant in error.

Allen, J.

THIS is an action upon an accident insurance policy. Plaintiff prevailed, and defendant brings error.   In June, 1916, defendant issued an accident insurance policy to one Elmer G. Anderson, which policy provided for an indemnity of $600.00 for loss of life of the insured.   Anderson was killed on December 23, 1916.   The plaintiff sues as his administratrix.

The record is before us upon an application for a supersedeas, and the principal question to be determined, under the assignments of error which are argued, is whether or not, after the issuance of the policy, the insured *changed his occupation*, within the meaning of Paragraph 13 of the Schedule of Warranties made by the insured at the time of taking the policy.

The paragraph in question, so far as material upon this review, reads as follows:

"If during the life of this policy I  *  *  *  change my occupation, I agree to at once report such fact to this Company."

As a defense, the defendant pleaded, and sought to prove, that the insured, during the life of the policy, had changed his occupation, and had wholly failed to report such fact to the company, and that, therefore, the plaintiff's claim under the policy became and was invalidated under a clause of the policy which reads as follows:

"Failure to comply with any of the provisions and conditions of this policy shall invalidate any and all claims hereunder."

The plaintiff denies that there had been any change of occupation, on the part of the insured. The evidence bearing upon this point is, in the main, neither conflicting nor disputed.

The insured, in the Schedule of Warranties accompanying the insurance policy, gave as his occupation: "Superintendent of Quartz Mine-Overseeing." The evidence shows that for many years prior to his death, his life work or occupation was that of "a mine superintendent." The last position of this kind was held by him at "the Mineral Farm," which he left on November 12, 1916. About two or three days thereafter the insured came to the Mountain Top Mine in Ouray County, with an understanding had with the manager of the mine that he, the insured, should in a short time be placed in the position of mine superintendent. The manager testified that he gave Anderson, the insured, temporary employment because he, the manager, "desired to hold him until it was convenient to make the change, that is, to dispense with the services of the man who then held that position (of mine superintendent)." Anderson was accordingly given a temporary position as mine timberman. It was understood by him, and also by the mine manager, that this was merely a temporary employment. The manager also testified: "I solicited him (Anderson) to take the position of mine superintendent, but temporarily, to become familiar with the mine by working at other employment, until such time as it was convenient to make the change." Anderson worked as a mine timberman for a period of about thirty days. On December 22, 1916, he left the mine, quitting his employment as timberman, and started for his home in Delta County. At the time of such leaving, it was understood between him and the manager that he, the insured, was to return and assume the position of mine superintendent. The follow-

ing day, December 23, he was killed, his death being caused by a snow slide.

The trial court held that Anderson's acceptance of the temporary employment of mine timberman did not amount to a change of occupation, within the meaning of the clause of the policy now under consideration. We are of the opinion that such holding, and plaintiff's contention to the same effect, should be sustained. . The evidence clearly shows that the usual occupation, the life work, or business of the insured, was that of mine superintendent. The evidence also amply sustains the following finding of the trial court:

"Anderson's position as timber man was a mere temporary employment. The intention was that he should have an opportunity to become familiar with the mine, and then, in a very short time, a few weeks at the most, should be given the position of superintendent of the mine, in the place of the then superintendent, who was to quit or have his services dispensed with."

The term "occupation," as used in the clause of the policy hereinbefore quoted, means the usual business of the insured. In *Stone v. United States Casualty Co.,* 34 N. J. L. 371, it was held that the words "changing his occupation" meant engaging in another employment as a usual business. Using the term "occupation" in the sense above indicated, the insured in the instant case had not changed his occupation when he became engaged in the temporary employment of mine timberman. He intended to resume work as mine superintendent. The position as timberman was incidental to his usual vocation of mine superintendent. Such position enabled him to become better prepared for the position of mine superintendent which was promised him and for which he evidently waited while acting as timberman. He did not intend to substitute the work of a timberman for that of a superintendent as his usual occupation. The "change" referred to in the clause in question means, as said in 14 R. C. L. 1153, sec. 331, "the substitution of one business or vocation for another as the usual

business or vocation of the insured." In a note in 24 L. R. A. (N. S.) 1174, 1175, numerous cases are collected which hold that the temporary following of other pursuits does not change one's occupation so as to avoid a policy of accident insurance. To the same effect are most of the authorities reviewed in 3 Cooley's Briefs on the Law of Insurance, 2208. See also *Taylor v. Illinois Commercial Men's Assn.,* 84 Nebr. 799, 122 N. W. 41, 24 L. R. A. (N. S.) 1174. There was no error in the trial court's finding the issues for the plaintiff in this connection.

It is also contended by the defendant that it should have prevailed with reference to its defense involving that clause of the policy which reduces the amount of indemnity in a case where the insured is injured while engaged in any occupation more hazardous than that stated in the Schedule of Warranties. With reference to this branch of the case, the facts are the same as in the case of *Midland Casualty Co. v. Anderson,* 172 Pac. 1067, Colo., which involved the same accident, the same insured, and practically the same clause of an accident insurance policy, as is now being considered. For the reasons stated in the *Midland* case, the record shows no error affecting the defense in question.

The remaining defense, discussed in the briefs, is to the effect that the death of the insured was due to an unnecessary exposure to danger, which, if it were the fact, would reduce the defendant's liability. The trial court found the issue, in this matter, adversely to defendant, and we find the evidence sufficient to support the judgment in this respect.

The application for a supersedeas is denied, and the judgment is affirmed.

Affirmed.

Decision *en banc.*