No. 13,068.

FEDERAL LIFE INSURANCE COMPANY *v.* HALL.

(11 P. [2d] 215)

Decided April 25, 1932.

Messrs. Hunter & Bell, for plaintiff in error.

Mr. James McKeough, Mr. Frank H. Hall, for defendant in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

These parties appeared in reverse order in the trial court and are hereinafter designated as there, or as Mrs. Hall and the company respectively. Mrs. Hall's deceased husband is referred to as Hall.

Hall, who held an accident policy in the company, was killed by the collapse of a structure on which he was working. Mrs. Hall brought this suit on said policy. The cause was tried to the court by agreement, and to review a judgment thereon entered against it the company prosecutes this writ and asks that it be made a supersedeas.

The policy in question provided for the payment of $1,000 to Mrs. Hall in case of loss of life "by cyclone or tornado," or "by the collapsing of the outer walls of a building while the insured is therein." Also "That no reduction shall be made in any indemnity herein provided by reason of change in the occupation of the insured or by reason of his doing any act or thing pertaining to any other occupation. This insurance does not cover * * * death or loss while performing occupational duties. It is understood and agreed that the application is not part of the contract and shall not be admitted in evidence on behalf of the company for any purpose whatsoever." It further provided that each annual renewal, up to the fifth, should add ten per cent to the amount payable. It had been twice renewed, hence the judgment was for $1,200, plus interest and costs. The cause was

submitted on plaintiff's evidence, defendant having offered none.

All the assignments presented and argued may be thus summed up: There could be no recovery, (1) Because Hall was a carpenter and was killed while in the performance of "occupational duties." (2) Because death was not the result of "cyclone or tornado."

█ 1. Hall's occupation was not mentioned in the policy and no language used therein related any liability thereunder to any given occupation. He was first a ranchman. He lived on a homestead, had a herd of 25 milch cows, sold cream, and butchered and sold his calves for veal. He raised chickens, and marketed from 350 to 500 turkeys annually. When not so occupied he took such work as he could get. This included employment on the public highways, running a stationary engine and acting as a salesman. For some fourteen months last past he had occasionally done rough carpenter work, acting in fact as what might be called a carpenter's helper. He did not have a set of carpenter's tools and there is no evidence that he performed any such labor requiring a skilled workman. He was killed February 27, 1930, while assisting in the erection of a shed for a neighbor. In answer to the question contained in the proof of death "Occupation of deceased at the time of injury" plaintiff wrote "Carpenter and ranchman." If the words "occupational duties" were to be applied to every casual and temporary employment in which Hall engaged, this policy would be thus construed into a mere instrument for the furthering of a confidence game. The phrase was doubtless intended to apply to the insured's ordinary and usual occupation. There is nothing in this record to justify the conclusion that the carpenter trade was such. Hall's work in that line was apparently nothing more than the roughest and most ordinary sawing and nailing of boards. It might have been performed, and is every day performed, by unskilled farm boys. It has been repeatedly held that the term "occupation," as used in ac-

cident policies and applications therefor, refers to the insured's ordinary and usual business, neither to recreational activities nor to incidental nor temporary employment. *Union Mutual Accident Ass'n v. Frohard,* 134 Ill. 228, 233, 25 N. E. 642, 10 L. R. A. 383; *Sovereign Camp W. O. W. v. Craft,* 208 Ala. 467, 470, 94 So. 831. Hence "occupational duties" refers to duties incident to insured's ordinary and usual occupation, not to duties incident to an unusual and temporary employment.

██ 2. The structure on which Hall was engaged when killed was a farm shed 150 feet long, 14 feet wide, 6 feet high (from the foundation)' at the back, eight in front, and open. It had a concrete foundation to which the framework was bolted. The uprights were to be set in concrete but this had not been poured. Otherwise the structure was braced. It faced the south which was its open side. The roof was on and both ends closed. As it stood it weighed approximately 12,000 pounds. Hall was working at the back nailing on "batts" which were being sawed by an associate. A truck used to haul building material stood fifty feet from the shed, occupied by the driver. Another workman was near Hall at the back of the shed. A strong, straight wind had been blowing during the forenoon. About 11:00 a. m., a "twister" of "funnel shape," "taking about fifty foot on the ground" was noticed approximately a quarter of a mile distant, moving in a direction which indicated to the workmen that it would not strike them. Engaged in their labors they gave it no further attention until it struck "too quick to see." The shed collapsed, turned entirely over and piled up approximately eighteen feet distant with the roof underneath. Hall was crushed to death instantly in the first fall and left lying some eight feet from the wreckage. Another workman was knocked down as the debris passed over him, but was not seriously injured. The driver of the truck dropped flat in the bed through which two 4x4 inch timbers, torn from the shed, were driven "endways." The bolts holding the framework to

the foundation were broken or torn out. Papers, weeds, splinters and pieces of wreckage were lifted high in the air. If this was a gentle zephyr, or an ordinary breeze, our vocabulary will have to be revised. Strictly speaking it was probably not a cyclone, which Webster defines as "a violent storm, often of vast extent, characterized by high winds rotating about a calm center of low atmospheric pressure." * * * "The term includes the hurricane, typhoon, baguio and tropical storms," but it certainly was some form of tornado which, the same authority tells us, is "a funnel-shaped cloud, like a waterspout, sand column, or dust whirl, with very violent and destructive eddies and whirls of wind, progressing in a narrow path for many miles over the land * * * so rapidly that wooden structures are often lifted and burst open by the air confined within them." If not it would be difficult to conceive a more foolish waste of money than the purchase of policies against tornadoes in Colorado.

In a suit involving the destruction of a building insured against loss by "cyclone or hurricane" it was held that "the words tornado and hurricane are synonymous, and mean a violent storm, distinguished by the vehemence of the wind and its sudden changes. While the definition of a cyclone is 'a rotary storm or whirlwind of extended circuit,'" citing Webster's Unabridged Dictionary. *Queens Ins. Co. v. Hudnut Co.*, 8 Ind. App. 22, 26, 35 N. E. 397. Because in that case it was admitted that the loss was not caused by "a cyclone, tornado or hurricane" but by "a very high wind prevailing," it was held that the loss insured against was admitted.

One who gave his occupation as "superintendent of quartz mine—overseeing" obtained an accident policy which provided that change of occupation without notice thereof to the company would invalidate the contract. He took temporary employment, for thirty days, as a mine timber man, without notice. We held this no change

of occupation within the terms of the policy. *Union H. & A. Co. v. Anderson,* 66 Colo. 195, 180 Pac. 81.

If the occupation of the insured in that case was mine superintendent while he was doing the work of a mine timber man, his occupational duties were the duties of a superintendent. It follows that in the instant case Hall, while temporarily employed in the construction of this shed, was still a ranchman, and his occupational duties were the duties of a ranchman, not a carpenter.

Since we are convinced the evidence shows that Hall lost his life as the result of a tornado, and while not engaged in occupational duties, we need not notice the contention of the company that he could not recover under the provision for payment in case of death caused "by the collapsing of the outer walls of a building while the insured is *therein,*" because Hall was on the *outside* at the time of the accident.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.