CHURCH MEMBERS RELIEF ASSOCIATION *v.* FELKER.

[No. 14,863. Filed November 14, 1934. Rehearing denied January 26, 1935.]

*Edwin E. Thompson* and *Johnson & Zechiel,* for appellant.

*Charles E. Henderson* and *Laurens L. Henderson,* for appellee.

SMITH, P. J.—Appellee, as sole beneficiary under a certain insurance policy issued by appellant upon the life of one Daniel G. Felker, brought this action on said insurance policy to recover for the accidental death of her husband.

The amended complaint upon which the cause was tried is in one paragraph, and alleges in substance that appellant issued its insurance policy upon the life of one Daniel G. Felker, who was the husband of appellee; that appellee was the sole beneficiary thereunder; that the insured was a preferred risk under the contract, and engaged in the profession of a minister of the gospel, and was so engaged in said profession at the time of his death; that, on December 9, 1930, the insured, while said policy of insurance was still in force, met his death solely through external, violent, and accidental means, being killed by a shot fired by some un-

known person; that appellee furnished proof of loss to appellant as required by said policy of insurance, and appellant refused payment under said contract. Judgment was prayed in the sum of $4,500.

To this complaint a copy of the insurance policy was attached, and made a part thereof.

Appellant answered in two paragraphs: First, a general denial; second, setting up the incorporation of the appellant under certain statutes, and that the purpose of the association is to transact a life, and sick and accident insurance business for church members under the assessment plan; that a policy of insurance was issued to Daniel G. Felker upon his written application, said application being attached to and made a part of the answer; that the premium on said policy of insurance was $22 per year, or $5.76 per quarter, and that the insured elected to and did pay his premiums quarterly; that the insured died as the result of being shot with a bullet from a loaded firearm while engaged in hunting deer in a rough, hilly, wooded section of country in Pennsylvania; that, while so engaged, he was in an extra dangerous and extra hazardous situation; that appellant has a book commonly designated as a classification manual, which is a part of the contract of insurance, and uses the same in the classification of risks; that in said manual, hunting, either professional or amateur, is listed as extra hazardous; that, under the terms of the policy and by-laws of the appellant, the policy issued to appellee was not based on his occupation, but entirely on the nature of the risk and the circumstances under which the insured was injured, and that the classification applied to the act at the time of the injury and was extra hazardous; that under the terms of the policy appellee was entitled only to the sum of $400, less three quarters of the yearly premium, which had not been paid, in the amount

of $17.28; that the insured at the time of his death was engaged in an extra hazardous enterprise, and that under the terms of the contract was entitled only to payment under such risk as provided in the contract. Then follow allegations about the tendering of the payment of the money due under the contract, and alleging liability only in the sum of $382.72.

There were submitted with the amended complaint certain interrogatories which were answered by the appellant, which have no bearing upon the controversy herein.

Upon these issues, the cause was submitted to the court for trial without a jury. A general finding was made for appellee, and judgment entered in the sum of $3,982.75.

Appellant seasonably filed its motion for a new trial, setting out in different forms three causes therefor: (1) That the decision of the court is not sustained by sufficient evidence; (2) that the decision of the court is contrary to law; (3) that the assessment of the amount of recovery is erroneous in that it is too large.

This motion for new trial was overruled, to which appellant duly excepted, and perfected an appeal to this court, assigning as error the overruling of said motion for new trial.

The policy of insurance provided for the payment of the loss of life "as preferred risk, $4,000," and "as extra hazardous risk, $400."

This appeal raises the sole question, Is appellee entitled to recover under the provisions in the policy as a preferred risk, or the extra hazardous risk as provided therein?

There is no dispute in the testimony, which is mainly documentary, and this calls for a construction by the court of the contract between the parties.

In determining this question, we deem it proper to

set out a portion of the policy of insurance and the by-laws. That portion of the policy of insurance involved herein is as follows:

"1. The risks of this Association are classified according to the Classification Manual of the Association, which Manual is referred to herein and made a part hereof, and are divided into four separate classes, viz.: (a) Preferred (b) Ordinary (c) Hazardous (d) Extra Hazardous. This policy is automatic, and if the insured shall suffer any accidental injury fatal or otherwise, while this policy is in force, the Association will be liable (provided the risk is insurable) for the payment to the insured, or to his beneficiary, of the benefits and indemnities payable under whatever class the accident is indicated or if not indicated, under whatever class the accident is, upon reasonable interpretation, most nearly indicated in the Classification Manual."

That portion of the by-laws referred to is as follows:
"Classification of Risks.

"Sec. 1.—The risks of this Association are not determined solely by occupation, but shall be divided into four separate classes, viz.: Preferred, Ordinary, Hazardous and Extra Hazardous. The Board of Directors shall cause to be prepared a Classification Manual showing under which of the above classes benefits shall be paid in the event of accidental injury to the insured. Every policy issued shall be classed as Automatic. If therefore, the insured shall suffer any accidental injury, fatal or otherwise, the Association will be liable for the payment to the insured, or to his beneficiary, of the benefits and indemnities payable under whatever risk it is indicated or most nearly indicated in the Classification Manual."

These by-laws, classification manual, and the application for insurance are made a part of the contract.

That portion of the classification manual mentioned and pertinent hereto provides that hunting, professional or amateur, is classified as "extra hazardous."

The contract of insurance herein is different from

the ordinary insurance policies that have been issued in the insurance field in the past in that the policy provides that the risks of the association according to the classification manual are divided into four separate classes, namely, preferred, ordinary, hazardous, and extra hazardous, and that the policy is automatic. It further provides that, if the insured shall suffer any accidental injury, fatal or otherwise, while the policy is in force, the association will be liable for the payment to the insured or his beneficiary *"of the benefits and indemnities payable under whatever classification the accident is indicated."*

The by-laws also provide that, if the insured shall suffer any accidental injury, fatal or otherwise, the association will be liable for the payment to the insured or his beneficiary *"of the benefits and indemnities payable under whatever risk it is indicated, or most nearly indicated in the Classification Manual."*

The parties herein had a right to make whatever contract relating to insurance they desired, provided it was not in violation of law, or contrary to public policy. There may be a valid stipulation in a policy of insurance wholly exempting the insurance company from liability in case of death from specified diseases, and also limiting liability from accidental death when the insured is engaged in a hazardous undertaking, provided, of course, that these limitations are clearly made a part of the contract between the parties. *Redmen's Fraternal Accident Association v. Rippey* (1913), 181 Ind. 454, 457, 103 N. E. 345, 104 N. E. 641.

It is also a known rule that an insurance policy should be so construed as to effectuate indemnities to its insured or his dependents against loss rather than to defeat them; and where any reasonable construction can be placed thereon that will pre-

vent the defeat of the insured's indemnification for a loss, that construction will be given to it. *Masonic Accident Insurance Company* v. *Jackson* (1929), 200 Ind. 472, 482, 164 N. E. 628.

It is also the rule that, where there is any ambiguity in the contract of insurance, or when it is susceptible of two different constructions, that construction should be given to the contract which is most favorable to the insured. *Fletcher Savings and Trust Company* v. *American Surety Company of New York et al.* (1931), 92 Ind. App 651, 668, 175 N. E. 247.

In this case, however, there is no ambiguity in the contract of insurance, and there can be but one reasonable construction placed thereon.

Construing the certificate of insurance, by-laws, classification manual, and application together, as we must do for they are all part of the contract of insurance between the parties, we can place but one interpretation upon them, and that is that the insurer agreed to pay to the insured the amount provided in the insurance schedule according to the nature of the risk the insured was taking at the time he received his injuries resulting in his death. The evidence is undisputed that the insured was hunting, as an amateur, at the time of the accident. The contract provides that his beneficiary shall be paid under whatever class the accident is indicated therein. The evidence further shows that hunters, either professional or amateur, are classified as extra hazardous risks. These provisions were made a part of the contract to which the insured agreed at the time of taking out the insurance. Being in the act of hunting, which resulted in his accidental death, the insured should be classified under the terms of his contract as an extra hazardous risk, and his beneficiary is entitled to the sum of $400 under the contract, less the amount of

unpaid yearly premium provided therein, this being the amount specified in the policy to be paid for extra hazardous risks.

Appellee contends that because the insured was a minister of the gospel he was entitled to a preferred classification, and that the classification should apply even though he may have met his death while performing an extra hazardous act; and cites numerous authorities to the proposition. The difficulty with appellee's contention is that the authorities which she cites are not based upon the kind of an insurance contract involved here. Appellee cites, among others, the case of *Union Mutual Accident Association* v. *Frohard* (1890), 134 Ill. 228, 25 N. E. 642, 10 L. R. A. 383. In that case the by-law which was a part of the contract, and upon which the insurance association sought to relieve itself from liability, provided, in part, "Any member receiving an injury while engaged temporarily, or otherwise, in an *occupation* more hazardous than the one in which he was engaged when insured, etc.," shall receive only such benefits as provided in the class or occupation in which he was engaged at the time of the injury. It will be observed in that case that the insured was a merchant, and, at the time the contract was entered into, was classified in division A, which was a preferred classification. The court discusses the question of occupation, and holds that a fair interpretation of the contract means that, when the insured entered into any occupation or vocation which was more hazardous than the one under which he entered into the contract, then he was limited in his recovery; but that the doing of a casual act, of itself, was not a vocation or occupation, and did not limit the liability. Most of the cases cited by appellee turn upon the interpretation of similar language to that employed in the Frohard case, supra. The cases cited by appellee are upon

a different theory, and based upon a different contract from the instant case.

Here, the contract expressly provides that the classification of the insured shall be made at the time of the accident, and that payment shall be made under whatever risk the act causing the injury is indicated in the classification manual. This was the contract between the parties, and was a valid contract, which they were permitted to make, and is binding upon them. In the instant case, liability is limited according to the hazard of the particular act which insured was doing at the time of the accident and not his usual occupation. It is not an occupational contract, and does not come within the rule laid down in the Illinois case above, and the other cases cited by appellee. Under the contract of insurance involved here, if the appellee by vocation had been a professional hunter, but at the time of the accident and injury he was clerking in a hotel, doing office duty only for the time being, which comes under a preferred classification, he would not have been paid under the classification manual as an extra hazardous risk, but as a preferred risk. In other words, the contract involved herein works both ways. This is unlike contracts referred to in the cases cited by appellee which classify the risk by the occupation of the insured at the time of making the contract. This kind of contract limiting liability to the classification at the time of the accident, although comparatively new in the insurance field, is permissable under our law, and is such a contract as could be entered into between the parties. The case of *The Standard Life and Accident Insurance Company* v. *Martin, Admr.* (1893), 133 Ind. 376, 33 N. E. 105, throws some light upon this character of a contract.

The lower court found that the insured should be paid under the preferred classification, and rendered

judgment in the amount provided in the contract under such classification. The contract, under the plain terms thereof, does not justify such an interpretation.

The evidence does not sustain the decision of the court, and the amount of recovery is too large, hence the decision of the lower court is contrary to law.

The judgment of the lower court is hereby reversed with instructions to enter a judgment against the appellant for the sum of $382.72, together with interest thereon from the date of the accident, and that the costs both of this court and the lower court be assessed against the appellant.

Curtis J., dissents.