No. 13,604.

FEDERAL LIFE INSURANCE COMPANY *v.* LORTON, ADMINISTRATOR.
(51 P. [2d] 693)

Decided November 4, 1935.

Mr. Henry Hunter, Mr. Malcolm Erickson, Mr. Ralph T. Hunter, for plaintiff in error.

Mr. Albert L. Moses, for defendant in error.

*In Department.*

Mr. Chief Justice Butler delivered the opinion of the court.

The Federal Life Insurance Company issued a policy of insurance to Hugh Hines Busby. Busby died. The company refused to pay, whereupon George Lorton, as administrator of the decedent's estate, sued the company and recovered a judgment for $1,400. The company seeks a reversal of the judgment.

1. The policy provides that "the insurance does not cover * * * death or loss while performing occupational duties." Counsel for the company contend that Busby came to his death while he was engaged in his occupational duties, and therefore that there is no liability on the policy.

The evidence on this phase of the case is substantially as follows:

In May, 1932, Busby went to work for a Mr. Heigel, who owned a ranch near Alamosa. He was employed "to herd the cattle as caretaker * * * on the Brazos in New Mexico." After being thus engaged for about five months, he, together with some assistants, took the cattle to the ranch. When the cattle were returned, "the work was all done." Busby asked if he could stay during the winter for his board, and he did so. "Q. What was he supposed to do for his board? A. Chore around and help with the cows." "Q. What did his chores consist of? A. Feeding the horses and weaning

calves, looking after that and feeding them." "Q. He was just simply working for his board and doing general work and things that would come up for any of you to do? A. That is right." He had a little riding to do and he was willing to work at anything. He worked at general work. His work was almost wholly around the stock. "He just helped around with this and that." He had no regular job. "He took care of the horses and feeding around." Webster's New International Dictionary (1935 Ed.) thus defines "chore": "A small or odd job." In the plural, "the regular or daily light work of a household or farm."

About the first of December, 1932, Busby and Heigel's two sons did the chores around the house in the morning, and the sons then started in a truck to wreck an adobe building on Heigel's land about two miles away. Busby asked if he could go along. One of the sons answered that it did not make any difference—"if he wanted to go along, to come along." Busby went, and he helped with the work. The work lasted several days. On the fourth day Busby was injured by a falling wall. He died of his injuries. No other buildings were wrecked while Busby was on the ranch, and he never had done that kind of work before.

■ We are of the opinion that at the time of his death Busby was not engaged in his occupational duties, within the meaning of the policy. The words "occupational duties" were intended to apply to the insured's ordinary and usual occupation, and wrecking buildings was not Busby's ordinary and usual occupation. *Federal Life Insurance Co. v. Hall,* 90 Colo. 581, 11 P. (2d) 215. In the Hall case the same company issued the same kind of policy, and a controversy arose over the same provision. We said: "If the words 'occupational duties' were to be applied to every casual and temporary employment in which Hall engaged, this policy would be thus construed into a mere instrument for the furthering of a confidence game."

548

■ 2. Error is assigned on the court's refusal to give certain requested instructions. As neither the requested instructions nor those given are set out in the abstract, the plaintiff in error is not entitled to a ruling on such assignment. Nevertheless, we have examined the transcript and are of the opinion that the instructions given by the court sufficiently state the law applicable to the case, and that this assignment is without merit.

■ 3. It is said that the verdict is excessive.

The policy was for $1,000, but had this accumulation benefit provision: "Each consecutive full year's renewal of this policy shall add ten per cent to the specific losses as set forth in Parts I, II, III, or IV, until such accumulation reaches fifty per cent at the end of the fifth year, there being no further accumulations after the fifth renewal."

The complaint alleges payment of premiums for such renewals for four years, which would make the total covered by the policy $1,400. The jury rendered a verdict for that amount. Counsel say that there was no proof of renewals. But the answer admitted that the policy was in force at the time of Busby's death and that the "policy of insurance had been paid." As the policy was dated November 15, 1928, and ran for a period of only twelve months, it is obvious that it must have been renewed four times to be in force when Busby was killed. At the trial, before the introduction of evidence, this colloquy occurred:

"Mr. Moses: Now may we have it admitted for the purpose of the record that the deceased paid premiums on this policy of insurance each year up to the date of his death including 1932?

"Mr. Hunter: Just a moment. All right.

"The Court: That is admitted?

"Mr. Hunter: The policy is admitted and as to the payments of premium.

"Mr. Moses: That is that the premiums were paid each year including 1932?

"Mr. Hunter: Yes, that is admitted.  *  *  *

"Mr. Moses: You admit there were four annual payments, do you not?

"Mr. Hunter: We admit that the premiums were paid and the policy in force to November 15, 1933. The premium was paid in November, 1932, but now as to the previous years I thought my letter of transmittal covered that. It does not—uses the word 'renewal' through 1932. Now if it was merely a renewal of course that would be very different as to the amount he would be entitled to recover. So I would ask for proof as to those years.

"Mr. Moses: Well he paid five premiums. You admit that?

"Mr. Hunter: No, I can't admit the five. I will admit the payment in November and that the policy was in effect at the time of the accident."

Moreover, in plaintiff in error's request No. 2, the court was requested to instruct the jury that if they "believe from a preponderance of the evidence that after the date of said policy the said Busby paid four full years' premium in renewal thereof then your verdict will be for an additional $400.00 or a total of $1400.00, unless you further believe from the evidence that at the time of the death of said Busby he was engaged in the discharge of his occupational duty, in which event your verdict would be for the defendant."

In the circumstances, there is no merit in the contention that the verdict is excessive.

We find no error in the record. The judgment is affirmed.

MR. JUSTICE BURKE and MR. JUSTICE YOUNG concur.