Ross *v.* Equitable Life Assurance Society.

5-3184                                   375 S. W. 2d 222

Opinion delivered February 10, 1964.

*Shaver, Tackett & Jones,* for appellant.

*Keith, Clegg & Eckert,* for appellee.

Carleton Harris, Chief Justice. This case relates to an employment practice that has become widespread in recent times, and which is sometimes referred to as "moon-lighting." Appellant, Elmer E. Ross, a resident of Little River County, has been employed regularly by Day & Zimmermann, Inc., Loan Star Ordnance Division, Texarkana, Texas, as an equipment mechanic, since November 15, 1951. In his employment, Ross worked eight hours per day. During the last eight years, his work day started at 7:00 o'clock A.M., and concluded at 3:30 o'clock P.M. About six years ago, he became a part-time night policeman for the City of Ashdown. Ross acted as a

relief or substitute policeman for the regular employee, Chester Pruitt. For four of the last six years, he has served in such capacity for the City of Ashdown two nights each week.

On August 4, 1962, Ross, while working as a night policeman for the city, stopped an automobile, in which five youths from Fort Smith were riding. The automobile was stopped because the driver had run a stop sign. During the investigation, appellant was shot by one of the occupants of the car, requiring medical and hospital expenditures, for which appellant seeks to recover from the appellee company. The City of Ashdown carried no Workmen's Compensation coverage.

At the time Ross was injured, there were in full force and effect, group accident, health, hospital, and life insurance policies issued by the appellee, the Equitable Life Assurance Society of the United States, in favor of Day and Zimmermann, Inc., Loan Star Ordnance Division, affording non-occupational accidental bodily injury, or non-occupational sickness insurance benefits to the employees of Day and Zimmermann. The insurance company refused to make any payment to Ross, contending that his injuries arose out of his employment with the City of Ashdown; that, therefore, he had suffered an occupational accident, which precluded Ross from receiving any benefits under said policies. Appellant instituted suit against the company, seeking judgment in the amount of $791.39, together with statutory penalty and reasonable attorney's fees. On hearing, the court, sitting as a jury, found that Ross' injury arose out of and in the course of his employment with the City of Ashdown, and was not a non-occupational accident. From the judgment entered, denying recovery, appellant brings this appeal. Only one point is relied upon for reversal, viz,

"The trial court erred in ruling that the accidental bodily injury of appellant was 'occupational,' precluding recovery under the involved policies of insurance."

The section relative to hospital expense, *inter alia,* provides:

"No payment shall be made under the provision hereof entitled 'Hospital Confinement Benefits.' * * *

"(b) due to accidental bodily injuries arising out of and in the course of an employee's employment."

The accident and health sections also provide that no benefits are payable "for disability due to accidental bodily injuries arising out of and in the course of the employee's employment."

Appellant contends that the "employment" referred to concerns solely the employee's employment with Day and Zimmermann, Inc., and the accident and health insurance coverage is due to be paid when the employee is injured at any time, except when injured on his job with Day and Zimmermann. Appellant states:

"Insurance benefits are afforded the employees of Day and Zimmermann, Inc., for non-occupational bodily injuries preventing the employee from performing any and all duties pertaining to his employment, precluding benefits due to disability arising out of and in the course of the employee's employment. The employment, to which the policy refers, can only mean the employment of the named employee with the named employer, Day and Zimmermann, Inc."

On the other hand, appellee asserts that the policies were intended to cover accidents or sickness arising from non-occupational sources, and that Ross, though not injured because of his employment with Day and Zimmermann, was injured by virtue of his employment with the City of Ashdown, and consequently, since such injury occurred during a time when he was carrying out the duties of employment, the policies do not afford coverage. That, then, is the question—what is meant by the phrase, "due to accidental bodily injuries arising out of and in the course of an employee's employment?" Does this refer to *any* employment engaged in by an insured, or does it only refer to the employee's duties with

the company which made the group insurance plan available for the benefit of its employees, *viz,* Day and Zimmermann?

We are of the opinion that the phrase has reference to the employment with Day and Zimmermann, for the wording of the policies strongly supports that interpretation. Day and Zimmermann, Inc., are mentioned as "the employer," and this company is given the right to terminate the policies on any premium due date, or, subject to appellee's approval, to modify, amend or change the provisions, terms and conditions of the accident, health, or hospital insurance. The life insurance coverage gives the employee the privilege of changing the beneficiary from time to time by filing a written request with the employer (Day and Zimmermann), but the change of beneficiary is ineffective until Day and Zimmermann enter the change upon the insurance records.

An "Information Manual," explaining the insurance plan, was prepared by Day and Zimmermann for distribution to the employees. This manual commences, "To our employees: as evidence of our interest in the welfare of you and your family, we have made available for your benefit a Contributory Group Insurance Plan, which consists of the following: * * *"

The various benefits to employees of the company are then explained in detail. At Page 14 of the manual, it is pointed out that "accidents" are not covered if intentionally self-inflicted, sustained while performing military service in time of war or riot, sustained while performing police duty as a member of any military or naval organization, or sustained outside of the United States or Canada. Certainly in setting out these exceptions to coverage under the policy, it would have been quite easy to have likewise provided that coverage was not afforded if bodily injuries were sustained while working at *any* employment, for *any* employer.

No helpful cases have been cited on the particular point involved, and we have found none dealing with the exact situation. Perhaps the case which comes closest

to the instant litigation is *Federal Life Insurance Company* v. *Hall*, 11 P. 2d 215, which was decided by the Supreme Court of Colorado in 1932. There, Hall's occupation was not mentioned in the policy, and no language used therein related to any given occupation. As here, the insurance did not cover death or loss while performing occupational duties. Hall was a rancher, had a herd of milch cows, sold cream, and butchered and sold his calves for veal. He raised chickens, and marketed from 350 to 500 turkeys per year. When not so occupied, he took such work as he could get. This included employment on the public highways, and acting as a salesman. For about fourteen months before his accident occurred, he had occasionally done rough carpenter work, actually acting as what might be termed a "carpenter's helper." He was killed while assisting in the erection of a shed for a neighbor, when the shed was hit by a tornado. In answer to the question contained in the proof of death, the occupation of the deceased, at the time of the injury, was listed as "carpenter and ranchman." As here, the company refused to pay because it contended that Hall was performing occupational duties at the time of his death. The Supreme Court disagreed, stating,

"If the words, 'occupational duties' were to be applied to every casual and temporary employment in which Hall engaged, this policy would be thus construed into a mere instrument for the furthering of a confidence game. The phrase was doubtless intended to apply to the insured's ordinary and usual occupation. There is nothing in this record to justify the conclusion that the carpenter trade was such. Hall's work in that line was apparently nothing more than the roughest and most ordinary sawing and nailing of boards. It might have been performed, and is every day performed, by unskilled farm boys. It has been repeatedly held that the term 'occupation,' as used in accident policies and applications therefor, refers to the insured's ordinary and usual business, neither to recreational activities nor to incidental nor temporary employment. * * *

"Hence 'occupational duties' refers to duties incident to insured's ordinary and usual occupation, not to duties incident to an unusual and temporary employment."

It is true that Hall had engaged in carpentry work for only fourteen months, while Ross had been holding the night policeman job (though only two nights per week) for several years, but that fact is hardly sufficient to distinguish the cases. Another difference is that Hall purchased the insurance himself, while Ross is contending for benefits under policies purchased by his regular employer—but this circumstance would seem to. make Ross' position even stronger, since the policies definitely define his employer. The main similarity in the cases, and, we think, the most significant fact, is that neither Hall nor Ross was engaged in his "usual occupation" at the time of being injured. Hall's usual occupation was rancher, and Ross' usual occupation was equipment mechanic. For the reasons herein cited we are definitely of the view that the employment referred to by the policies can only have reference to the employment of Ross with Day and Zimmermann, Inc.

Even if it can be said that the policies are susceptible to the interpretation contended for by appellee, it must also be stated that they are certainly susceptible to the construction we have given. In such event, appellee still cannot prevail. As we stated in *National Life and Accident Insurance Co.* v. *Horace,* 206 Ark. 430, 175 S. W. 2d 984:

" 'If it be admitted that the policy is susceptible to this construction, it must also be admitted that this is not the only construction to which it is reasonably susceptible. The policy is ambiguous, to say the least of it, and the rule of construction followed by this court in many cases is to resolve ambiguous and doubtful language in favor of the insured, and against the insurer.' "

Likewise, in *Firemen's Insurance Company of Newark, N. J.* v. *Motley,* 222 Ark. 968, 264 S. W. 2d 418:

" 'Under well-settled principles, where the provisions of a policy are susceptible of two equally reasonable constructions, one favorable to the insurer and the other to the insured, the latter will be adopted. This is because the language is chosen by the insurer with the aid of experts employed for the purpose of writing the policy, and the insured has no voice in the matter. Therefore, where either of the two constructions may be adopted, it is fair that that which will sustain the claim and cover the loss will be chosen.' "

The judgment is reversed, and the cause is remanded with directions to render judgment in favor of appellant,[1] together with costs, statutory penalty, and a reasonable attorney's fee.

[1] It was stipulated at the trial that if Ross was entitled to anything at all under the policies, he was entitled to the amount sought in his complaint.