(No. 23671.—

THE WESTERN AND SOUTHERN INDEMNITY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(ANNA WYCH *et al.* Defendants in Error.)

*Opinion filed February 12, 1937—Rehearing denied June 2, 1937.*

SHAW and WILSON, JJ., dissenting.

ANGERSTEIN, PIGGOTT & ANGERSTEIN, (THOMAS C. ANGERSTEIN, of counsel,) for plaintiff in error.

AUGUSTINE J. BOWE, and WILLIAM J. BOWE, (JOHN D. CASEY, of counsel,) for defendants in error.

Mr. JUSTICE ORR delivered the opinion of the court:

Anna Wych, widow of Jacob Wych, filed a claim with the Industrial Commission against Louis B. Guthmann for the death of her husband. The arbitrator entered an award

in her favor and Guthmann did not petition for a review. The Western and Southern Indemnity Company, as the carrier of his liability under the Workmen's Compensation act, asked for successive reviews, first before the commission and then on *certiorari* before the circuit court of Cook county. In both instances the award was sustained. By this writ of error we are asked to reverse the judgment of the circuit court.

Guthmann operated a garage on Berkeley avenue, in Chicago, and owned a factory building on North Paulina street, some six or seven miles away. This building was a four-story structure. A store-room occupying part of the first floor was leased to Jacob Wych, who conducted a delicatessen store therein, with living quarters for his family in the rear. The whole building was heated from a common boiler in the basement, and sufficient heat had to be maintained for the tenants and to keep pipes from freezing in the unoccupied portions. Wych was hired by Guthmann to perform janitor services in the building, including the care of the heating plant, the cleaning of walks and the sweeping of stairways. His pay as janitor varied, averaging $25 monthly in the winter and lesser amounts in the summer. These wages were not paid to him in money but were given to him by way of credit on his rent obligations. He had been janitor for several years, during which time the character and amount of the tenancy of the building varied. Guthmann had made use of space in the building to store excess supplies of oils and grease that he used in his garage business. On the night of January 3, 1934, Wych went to the basement to bank the fire in the boiler. He fell down the basement steps and died the next day from injuries sustained in the fall.

So far as the evidence is concerned, we are satisfied that the award is in accord with the manifest weight of the evidence and that there was no failure to establish the relationship of employer and employee, so as to sustain

a jurisdictional claim for compensation. Careful perusal of the record convinces us that the arbitrator and the commission entered proper findings, fully justified by the proof. No citations are necessary to show the oft-repeated rule of this court that under such circumstances it will not disturb the factual findings of the commission.

The vital question in the case is whether the policy written by the company covered the compensable risks at the North Paulina street building. The company argues that it did not, and declares section 26 of the Workmen's Compensation act is unconstitutional because the construction placed upon it by the commission and the circuit court would impair the obligation of contract and take property for private or public use without compensation. The validity of a statute is not involved here if a determination of the question of its validity is not necessary to a decision of the case. (*Dean* v. *Northern Trust Co.* 259 Ill. 148.) Jurisdiction to review decisions in compensation cases was conferred upon this court by the legislature in the Workmen's Compensation act, and this jurisdiction is wholly apart from any consideration of constitutional questions. It is within the power of this court to say, in a particular compensation case before us for review, whether the validity of a statute is actually presented for determination, or, when presented, if a determination of the question is necessary or pertinent in reaching a decision. Whether a question of the validity of section 26 of the Workmen's Compensation act is involved here must depend upon a study of the policy. If the policy provisions are construed so as to cover the employment risks at the Paulina street building the question of the validity of section 26 is not presented.

A policy of insurance is a contract, and established rules of construction apply when an endeavor is made to discover the true intent of the contracting parties as expressed in the language of the policy. Their intentions can only be gathered from the language of the whole instrument.

(*Massie* v. *Belford,* 68 Ill. 290; *Chicago Home for Girls* v. *Carr,* 300 id. 478.) In arriving at their intentions effect must be given to each word, clause or term employed by the parties; none should be rejected for lack of meaning or as surplusage. (*Mittel* v. *Karl,* 133 Ill. 65; *Weger* v. *Robinson Nash Motor Co.* 340 id. 81.) The construction should be a natural and reasonable one. (*Conway Co.* v. *City of Chicago,* 274 Ill. 369.) The policy here was a standard form prepared by the company for its own use. Therein the name of the employer is given as, "Louis B. Guthmann d/b [doing business] as Berkeley Garage." His post-office address was given as "5210-34 Berkeley avenue, Chicago, Illinois." This was the address to which the employer agreed with the company all notices should be sent and should be considered as his residence and business address. As an employer he operated as an individual person. Item 3, as to its printed portions, read: "Location of all factories, shops, yards, buildings, premises or other work places of this employer, by town or city, with street and number," immediately following which was inserted, "5210-34 Berkeley Ave., and elsewhere in Illinois." A separate paragraph contained this quotation: "All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above as declared in each instance by the disclosure of estimated remuneration of employees under such of the following divisions as are undertaken by this employer. 1. All industrial operations upon the premises. 2. All office forces. 3. All repairs or alterations to premises. 4. Specially rated operations on the premises. 5. Operations not on the premises." Operations of employees were expressed in two classifications in the policy— the first were office employees, and the second "all other employees—including chauffeurs and helpers. (N.P.D. with No. 8391 'Automobile garages, repair shops, sales and service agencies.' ")

From the language of the policy it is clear that both parties realized their inability to definitely ascertain the full earned premium at the time the policy was written, because the number of employees and their individual remuneration would vary throughout the policy term. As the premium was based upon the total pay-roll for the term, the company had the right, during the life of the policy and for one year after its expiration, to examine the books of the employer to determine the actual premium earned.

It was agreed that the provisions of the Workmen's Compensation act were incorporated in the policy the same as if they had been written therein. The policy was to apply to all injuries sustained by the employees by reason of the business operations described in the employer's declarations, which "for the purpose of this insurance shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the places defined and described in said declarations or elsewhere in connection with, or in relation to such work places." If the employer should undertake operations not described or rated in the declarations, he agreed to pay the premium thereon when the premium was finally adjusted.

What were the intentions of the parties as divulged by the language of the policy and what was actually done by them? Guthmann was protected by the policy—not his garage business. Whether he operated under the name and description of Berkeley Garage was not material, for the policy protected him, as the employer, against loss at the garage. The phrase, "elsewhere in Illinois," cannot be called surplusage. It cannot be ignored in arriving at the intentions of the parties. This phrase, coupled with the rest of the policy—items having to do with the final adjustment or determination of earned premium, and the cognizance taken by the parties that the employer might engage in operations not defined or declared in the policy—all show

that "elsewhere in Illinois" was a phrase of substance and meaning. This conclusion is borne out by the second classification of employees, which included all the employees as they were when the policy went into effect and as they might be during the life of the policy. All his employees, present and future, were embraced within the second classification, excepting the clerical and office help. The business of the Berkeley Garage was not insured, but the employer was insured against loss from injuries sustained by his employees. "Elsewhere in Illinois" did not mean the conduct of a garage business by the employer "elsewhere in Illinois." To attach that meaning would be to unreasonably and unnaturally extend the policy language. The insurance company was constantly in a position to protect itself, for it had the right of access to the employer's records, and his books were, in the contemplation of the parties, to show the full amount expended for help in his business operations. The company at the time it wrote the policy was specifically acquainted with all the provisions of the Workmen's Compensation act when it incorporated the provisions of the act in the policy. It knew the requirements of section 26 made it mandatory for the employer to "insure his entire liability to pay such compensation in some insurance carrier; * * * all policies of such insurance carriers insuring the payment of compensation under this act shall cover all the employees and the entire compensation liability of the insured," etc.

A statutory certificate of compliance was filed by the company, wherein the commission was informed the policy covered the entire liability of Guthmann. It did not contain any words of limitation respecting the operations of the employer. To have done so would have shown the policy did not comply with section 26. The policy number was given and a form used similar to the one on file with the commission, but the insertions in the policy written were not presented in the certificate. After the injury and death

of Wych were known to the company and Guthmann an indorsement was made on the policy in order to have it cover risks at the Paulina street building. This amounted to an interpretation that the policy had not covered such risks. The indorsement made after the injury and death of Wych is clearly self-serving to both the company and Guthmann and therefore lacks probative force.

The decisions cited by the company in its briefs regarding the severability of business operations or enterprises of one corporation or person, with their separate and distinct liabilities and rights, do not apply to the facts of this case. Section 26 was designed to obviate the evil arising out of the existence of separate compensation insurance contracts for different operations within the same business. Here only one contract of insurance existed for Guthmann. He was the only one the company sought to protect against liability arising out of compensable injuries suffered by his employees. This protection covered the employees of Guthmann at the garage and his employees "elsewhere in Illinois." The company wrote the policy to comply with section 26 and certified to the commission it had done so. It created and inserted the language in the policy and the informative portions of the certificate. Under these circumstances any ambiguity of language therein must be resolved against the company. (*Massie* v. *Belford, supra; Toffenetti* v. *Mellor,* 323 Ill. 143.) The facts shown will not justify any assumption that Guthmann's employment activities were divisible into the Berkeley Garage and 1101 North Paulina street and that the policy covered only the risks of the first. With this premise discarded, the alleged constitutional objections to section 26 which are anchored upon that premise must fall with it.

The judgment is affirmed.                    *Judgment affirmed.*

SHAW and WILSON, JJ., dissenting.