Belknap,
July 2, 1947. } No. 3669.

FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY

*v.*

CLARENCE I. MANSON & *a.*

*Robert W. Upton, John H. Sanders* and *Frederick K. Upton (Mr. Frederick K. Upton* orally), for the plaintiff.

*Sheehan, Phinney & Bass (Mr. Bass* orally), for the defendant Manson.

*Johnson & Keller (Mr. Johnson* orally), for the defendant Sturrock.

BLANDIN, J.   In our opinion the plaintiff is obligated to defend the suit brought by the defendant Manson against the defendants Sturrock and Evans, and is not entitled to reimbursement from Sturrock and Evans for any losses incurred thereby.

All parties whose rights are in any way affected have requested the court to consider the matter of reimbursement in this proceeding. All the facts are before the court and justice and convenience seem to

require that this phase of the case be disposed of at this time. No reason appears why this cannot be done. Bouchard, Declaratory Judgments (2d *ed.*), *p.* 1012. The defendant Manson alone objects, but as his interest is not concerned he appears to have no standing. The case of *Continental Ins. Co.* v. *Charest*, 91 N. H. 378, does not appear controlling as there the defendant in interest did object to consideration of this question before the company involved actually became obligated to pay.

The plaintiff appears to have abandoned his original claim that the truck was being used as a public conveyance at the time of the accident, and to base his objections solely on the fact that the transportation of twelve to fifteen men to work daily, was a use not covered by the policy. The Trial Court found against the plaintiff on this issue, and it appears that the record substantiates his finding. The defendant Sturrock unquestionably had the right to use the car for business. It is a matter of common knowledge that many farmers in this state, as part of their business, do odd jobs with their trucks, such as hauling gravel for state roads, and various other forms of construction, and that this often includes carrying men to and from work. There was no limitation on the use for business contained in any part of the policy or declaration. It is significant, however, that item b of clause X of the policy does define and limit commercial use to "used principally in the business occupation of the named insured as stated in item 1, including occasional use for personal, pleasure, family and other business purposes." The company wrote the policy, and could have further defined or restricted business use had it desired. It appears that the use made of the truck at the time in question was not so materially different from the purposes stated as applicable thereto in the declaration as to make clause X operative. See 7 Appleman, Insurance Law and Practice, *s.* 4326, *p.* 108, and *s.* 4325, *p.* 107, and *Commercial Insurance Co.* v. *Blankenship*, 134 Fed. (2d) 784.

The plaintiff also claims that the United States is an insured, and legally responsible under the policy. Obviously the Government is not a person under our law. R. L., *c.* 122, *s.* 1, *par.* II. Nor is it believed it could be called an organization. Counsel for the plaintiff has brought no case to the attention of the court where such a definition of the word was given. Certainly "organization" is not commonly employed in speaking of the United States. Since the policy is held to mean what a reasonable person in the position of the insured would expect (*Hoyt* v. *Company*, 92 N. H. 242), it seems that this contention of the plaintiff is without merit.

However, the Court has found that at the time of the accident the driver Evans was not in the employ of the United States, nor was the truck then subject to any control by the Federal Government as to the manner of its operation. These findings are amply supported by the evidence. Sturrock testified that Evans was his employee at the time in question, that he paid him, took him on and off the job at will, merely notifying the W. P. A. foreman that he was furnishing him a different driver.

Evans testified in corroboration of the above, and also that after he left the airport no one representing the Government had any control over his driving, or issued any orders to him. The Court's finding that Evans acted in a dual capacity, being an employee of the United States at certain times and for certain purposes, and of Sturrock at other times and for other purposes, was clearly warranted. *Manock* v. *Company*, 86 N. H. 104; *McCarthy* v. *Souther*, 83 N. H. 29.

The cases cited by the plaintiff as sustaining his position with reference to this point are distinguishable from the present situation. In *O'Roak* v. *Casualty Company*, 285 Mass. 532, an individual was loaned a car by the insured until a specified time. He failed to return the car at the time agreed upon, and after driving away with it was involved in an accident while on his own business. The court held here that the individual as bailee was responsible to the insured as bailor.

In *Brandt* v. *Insurance Company*, 228 Wis. 328, a driver in the employ of a private corporation, and on its business, was involved in an accident. It was held that the corporation was an organization legally responsible. On the other hand the case of *Narloch* v. *Church*, 234 Wis. 155, supports the defendant's theory that the United States is not legally responsible. In that case the plaintiff, an employee of the State of Wisconsin, was riding in an automobile with the defendant Church, who was not the owner, when it was involved in an accident. Both were on state jobs and the car was being used with the consent of the owner. By virtue of a Wisconsin statute coverage was given to "any person or organization legally responsible for the use" with the permission of the insured.

The plaintiff was entitled to compensation by virtue of another Wisconsin statute. The court held that the State of Wisconsin was not a person or organization legally responsible for the use of the car, as the State is immune from suit save by its own consent. It distinguished this case from the *Brandt* case on that ground, as in the *Brandt* case a private corporation only was involved. The opinion also

pointed out that liability of the State of Wisconsin was in no way connected with the operation of the car, as the State would have been responsible if the injury had been caused by any other sort of accident.

The United States is also immune from suit except by its own consent, and by analogy to the *Narloch* case it thus appears that it is not legally responsible within the meaning of the policy.

The plaintiff finally contends that the defendant Sturrock failed to give it notice of the accident "as soon as practicable" within the meaning of condition "1" of the policy. The Trial Court found that notice was given as soon as practicable. Our decisions have held that the question as to whether the giving of a notice complies with such terms in a policy is one of fact. *Ward* v. *Company*, 71 N. H. 262, 267, and cases cited.

In *Guaranty Trust Company* v. *Company*, 79 N. H. 480, the court held that where the condition of the bond in an indemnity contract provided for immediate notice, a delay of four months and one day was not fatal as a matter of law, and upheld a jury finding that the condition was fulfilled. In the opinion, *Parsons*, C. J., indicated that the test was "reasonable compliance." *Id.*, 484.

In the present case the delay was approximately two months and ten days. There was evidence upon which the Trial Court could have found that the defendant Sturrock reasonably believed that the accident did not involve the plaintiff. Both in his signed statement given to the plaintiff's adjuster (plaintiff's exhibit No. 5), and in his letter to the company (plaintiff's exhibit No. 4), he indicated that he understood that the accident only concerned the W. P. A. and not the plaintiff.

The case of *Malloy* v. *Head*, 90 N. H. 58, relied upon by the plaintiff, holds that a delay of ten months in notifying an insurance company, without any excuse for the delay, except a statement by the deceased boy's father, in substance, that no one was to blame and they would never hear any more about it, was not notice as soon as reasonably possible. The opinion goes on to state that where the insured did not know that his servant or property was involved he might be excused for failure to notify. It also cites approvingly *Ward* v. *Company, supra; Guaranty Trust Company* v. *Company, supra,* with reference to the test being one of reasonable compliance.

The facts in the present case and those of the *Malloy* case are altogether different. It is not believed that the *Malloy* opinion, in view of its approval of the test of reasonableness, precludes as a

matter of law the Trial Court's finding that under all the circumstances of this case notice was given as soon as practicable.

Cases in other jurisdictions cited by the plaintiff, stand on their individual facts, and in any event are not controlling here. In the late case of *Depot Cafe, Inc.* v. *Indemnity Company*, 321 Mass. 220, the court, while holding that a delay of 46 days in giving notice barred recovery by the insured, adds these significant words "there is nothing in the evidence to show any extenuating circumstances attendant upon that failure."

The word "practicable" used in the plaintiff's policy, indicates more latitude than the word "immediate," as used in *Guaranty Trust Company* v. *Company, supra.*

In view of all the circumstances in the present case it cannot be said as a matter of law that the Trial Court's finding was clearly unreasonable.

*Judgment for the defendant.*

DUNCAN, J., did not sit: the others concurred.