Allstate Insurance Company, Appellant, v. George M. Hoffman, Edward Grochowski and Francis Grochowski, Appellees.

Gen. No. 47,575.

First District, Third Division.
April 16, 1959.
Released for publication June 3, 1959.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel) for appellant.

Philip H. Corboy, of Chicago (John W. Gustafson, of counsel) for Edward Grochowski and Francis Grochowski, appellees.

Latham Castle, Attorney General of the State of Illinois (William C. Wines, Edward M. White, Theodore Maheras, Assistant Attorneys General, of counsel) for George M. Hoffman, appellee.

PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff filed its complaint for a declaratory judgment seeking an adjudication that an automobile liability policy issued by it to the defendant George M. Hoffman, as owner of a 1950 Buick automobile, does not cover liability on his part for an accident occurring while he was on active duty as a member of the Illinois National Guard operating a two and one-half ton truck belonging to the Guard and in convoy from Camp Ripley, Minnesota, to the home armory in Chicago, Illinois. Plaintiff also contended that if coverage was afforded, Hoffman had forfeited his right thereto by failing to give written notice of the accident as soon as practicable, under the terms of the policy. The case was tried by the court without a jury and re-

sulted in a judgment denying the relief sought and holding that Hoffman's liability is covered by the policy, that plaintiff is obliged to assume Hoffman's defense in a case brought against him by the defendants Edward and Francis Grochowski, and to pay any judgment that may be rendered against him, within the limits of the policy.

There is substantially no dispute as to the salient facts. On June 22, 1955 plaintiff issued to Hoffman its automobile liability insurance policy No. 2 606 388, effective from that date for a period of one year; it described the insured as the owner of a 1950 Buick automobile. Hoffman had for five and one-half years been employed by Wallace Auto Service. He is also a member of the Illinois National Guard. From the affidavit attached to his answer, it appears that he had enlisted in the National Guard in August 1953 and was assigned to Headquarters Company, 2nd Battalion, 131st Infantry, of which he is still a member. His duties with the National Guard required attendance at meetings one night a week and a two-week encampment period during the summer; during this period he was compensated for his services by the Department of Finance of the State of Illinois.

On July 23, 1955 Hoffman had completed his two weeks of active service at Camp Ripley, Minnesota, and was returning to Chicago. He had the rating of vehicle driver and was operating a two and one-half ton G.M.C. truck belonging to the National Guard. At a point north of Evansville, Wisconsin, the truck he was operating became involved in an accident in which the Grochowskis were allegedly injured. According to Hoffman, he reported the accident the same day to the investigating officer of the convoy, Lieutenant Eyres, and to his superior officer as soon as he reached the home armory. The accident was not reported to plaintiff until almost two years later.

316

In mid-December 1955, Hoffman was served with a summons in the case of Edward and Francis Grochowski v. Major General Leo M. Boyle, Illinois National Guard, G. W. Achterberg, and Hoffman, case No. 55–S–18 652, in the Superior Court of Cook County. He turned the summons over to Captain Lutchstrum, his Headquarters Commander (2nd Battalion, 131st Infantry, Illinois National Guard). In that case Latham Castle, Attorney General, who is charged by statute with the duty of representing national guardsmen in actions arising out of accidents occurring while they are on active duty (Ill. Rev. Stat. 1957, ch. 129, Sec. 271) filed an appearance and a motion to dismiss the case on behalf of Hoffman. On trial Hoffman testified that he had received a letter of inquiry from the State Military-Naval Department as to whether he had any insurance, and that he took the matter up with Lieutenant Matsie, who advised him to return the letter with the statement that he had none. Plaintiff was first notified of the accident by a letter from Latham Castle, dated May 29, 1957. Upon receipt of this letter it served Hoffman with a notice of reservation of rights, dated June 7, 1957. Its investigators also interviewed him, and on August 21, 1957 Hoffman was notified that plaintiff disclaimed any and all liability to him and others under the policy, and also so advised the Attorney General. The instant suit for declaratory relief was filed by the insurance company on October 7, 1957.

 The issues presented are: (1) whether the alleged liability of the defendant, Hoffman, is within the coverage afforded by the policy; and (2) whether the insured has complied with the conditions of the policy requiring notice. The pertinent provision of the policy provides: "This Policy Does Not Apply under: . . . 2. Coverages A, B and C (1) to any non-owned automobile (a) while used in the business or occupa-

tion of the named insured or spouse, except a private passenger automobile operated or occupied by the named insured, spouse or servant, . . ." Obviously, the two and one-half ton military truck being operated by Hoffman at the time of the accident was a non-owned automobile, since it was admittedly the property of the Illinois National Guard; nor can it be said to have been a private passenger automobile within the provisions of the policy. The principal question presented is whether liability arising out of its operation and use by Hoffman in the discharge of his duties as a guardsman was excluded by the foregoing provision. On this point the Attorney General, representing Hoffman, and private counsel on behalf of the Grochowskis, in separate briefs, take the common ground that service with the Illinois National Guard did not constitute a business or occupation of the defendant Hoffman within the meaning of the policy, and that for that reason liability on his part, if any, was within the coverage. The trial judge sustained this contention. Specifically, the argument of counsel and the finding of the court seem to be that Hoffman's employment as a mechanic by Wallace Auto Service was the only business or occupation in which he could be engaged. It does not appear from the terms of the policy or from the evidence that any such limitation was contemplated by either Hoffman or plaintiff. The court found that at the time of the accident Hoffman was not engaged in any "business or occupation of his own." Neither of these terms is restrictive in its meaning nor made so by any provisions of the policy. Plaintiff argues that at the time of the occurrence the business of Hoffman and the one in which he was engaged was that of operating a military truck; that he was serving as an enlisted man in the National Guard, and for the two-week period of his active service he was not engaged in any other busi-

318

ness or occupation. One of the duties required of him by the Guard was to drive a truck, and he was so engaged at the time of the accident. It was his business, as well as that of his superiors of the unit to which he was attached, to see that the truck and the equipment or personnel which it was carrying were returned to the home armory in Chicago.

It is not uncommon for an insured to have a business in addition to his regular and customary occupation which he may pursue primarily or even wholly for purposes other than pecuniary gain; but such collateral business would nonetheless constitute a business or an occupation while so pursued. Since the policy contains no restrictive provisions as to the business or profession of the insured, it would seem that coverage or noncoverage is to be determined by the terms and provisions of the policy and not by reference to the particular business or occupation of the insured described in the policy.

The question under discussion is a novel one in the courts of this State. Although not pertinent on the facts, there are cases in other States in which the general connotation of the word "business" has been considered. In Dickey v. General Acc. Fire & Life Assur. Corporation, 328 Pa. 541, 195 A. 875, the court observed that the " 'business' of the assured, as intended in the policy, was anything in which he desired to concern himself."

The facts in Merchants Mutual Casualty Co. v. Capobianco, 100 N. H. 223, 123 A.2d 159, are analogous to those in the case at bar. An action was there brought for declaratory judgment to determine plaintiff's obligation under an automobile policy issued to defendant as the owner of a Buick automobile. Capobianco was employed at the State Military Reservation by the United States Property and Finance Office in a civilian capacity as a general mechanic. Some 500

military vehicles of various kinds were normally stored and maintained subject to requisition for use off the reservation by National Guard units throughout the State. These vehicles were in defendant's charge for maintenance and storage. They were operated by truck drivers employed at the reservation. Capobianco was not classified as a truck driver, and it was not a part of his regular duty to drive these trucks on the highway. At the time of the accident all the truck drivers employed at the reservation were at summer camp with the National Guard. A hurricane caused a power failure at the Concord Hospital. A captain in charge at the military reservation ordered Capobianco to transport a generator to the hospital. On the way he was involved in an accident with an automobile operated by one Warren. The policy issued by plaintiff to Capobianco provided "that 'use of other automobiles' coverage shall not apply 'to any automobile while used in the business or occupation of the named insured.'" The trial court concluded that the emergency was not work in which the insured was usually and regularly engaged, and accordingly entered judgment for defendant. In reversing this judgment, the reviewing court said: "The policy is to be given the meaning which a reasonable person in the position of the insured would give to it. Farm Bureau Mutual Automobile Ins. Co. v. Manson, 94 N. H. 389, 392, 54 A.2d 580. The duties of an occupation are not ordinarily thought of as being limited to the performance of those acts regularly and usually required by the work but are generally understood to include those additional acts the need for the performance of which arises only infrequently but which are none the less a part of the occupation. . . . Thus, even a classified truck driver operating the truck on the day of the accident would have been performing work other than that in which he was regularly or usually engaged.

320

The important fact is that 'at the time of the accident, Capobianco was driving the army truck . . . in compliance with an order of his superior,' an authorized order which he had a duty to obey, and was receiving his regular pay for so doing. Under these circumstances no reasonable person in Capobianco's position would consider that such use of the truck was not a part of his occupation." See also Leonard v. Maryland Casualty Co., 158 Kan. 263, 146 P.2d 378, and Dickey v. General Acc. Fire & Life Assur. Corporation, referred to above.

Cases cited by the Attorney General on behalf of Hoffman are not helpful. The early case of Dunne v. People, 94 Ill. 120, merely upholds the constitutionality of the statute establishing the National Guard. Hays v. Illinois Terminal Transp. Co., 363 Ill. 397, and Goldstein v. State, 281 N. Y. 396, 24 N.E.2d 97, hold that a guardsman on active duty is not an employee of the State as the term "employee" is used in the respective Workmen's Compensation Acts—statutes which are not here involved. In Down v. Comstock, 318 Ill. 445, the court held that the word "business" has been often used with reference to the execution of a will, and that the use of that term in an instruction would not be misunderstood by the jury, even though the testator's principal occupation had been that of farming. Union Mutual Accident Ass'n v. Frohard, 134 Ill. 228, involved a life insurance policy. The by-laws of the insurer classified various occupations according to their respective hazards, and the amount of coverage was made dependent upon those classifications. Accordingly, a change from one occupation to a more hazardous one reduced the coverage. Neither the policy nor the factual situation in that case is in anywise similar to those in the case at bar.

On oral argument plaintiff's counsel called our attention to Voelker v. Travelers Indemnity Co. (United

States District Court for the Northern District of Illinois, 14 Automobile Cases 2nd 375). That case is precisely in point. As in the instant proceeding, a National Guard unit was returning to Chicago from its summer encampment in Minnesota. Voelker, a member of the unit, was operating a two and one-half ton truck in the returning convoy, and while so engaged was involved in an accident in Minnesota with a civilian automobile whose injured passenger brought suit in Minnesota against Voelker to recover damages. Voelker in turn brought a declaratory action in the Superior Court of Cook County, which was removed to the District Court for the Northern District of Illinois on the ground of diversity of citizenship, to construe the policy issued by defendant to him as the owner of a Pontiac automobile. As here, the policy provided that it did not apply "to any automobile while used in a business or occupation of such named insured or spouse, . . ." Plaintiff moved for a summary judgment; on hearing, the motion was denied by Judge Knoch, and the suit dismissed. Judgment was affirmed by the United States Court of Appeals in 260 F.2d 275. Judge Major, speaking for the court, said that, while the question of defendant's freedom from liability under the exclusion clauses was not free from doubt, "we are of the view that the trial court reached the right conclusion. . . . It is grossly unreasonable to think that either the insurer or the insured, upon issuance of the policy covering the latter's private passenger automobile and incidentally making such coverage applicable 'to any other automobile,' contemplated that the coverage extended to the insured while driving a truck as a member of the National Guard. Such coverage would have greatly increased the hazard against which the insured was protected, and as a matter of common knowledge would likewise have greatly increased the premium for such cover-

age. . . . What constitutes 'regular use' depends upon the circumstances of the case. Certainly the truck driven by plaintiff at the time of the collision was in the 'regular use' of the National Guard. . . . It is also our view that the truck was being 'used in a business . . . of such named insured.' It was being used in the business of the National Guard, of which plaintiff was a member. In discharging his obligation to the National Guard, we think that in driving the truck he was not only engaged in its business but in his own business as well. . . . Neither do we think that the fact that plaintiff had other employment upon which he depended for his livelihood detracts from the view that he was also engaged in a business as a member of the National Guard. A person during the same period can be engaged in more than one business. Such was plaintiff's situation."

We have reached the conclusion that plaintiff's contentions are sound and supported by the authorities presented, that Hoffman's liability, if any, to the Grochowskis is excluded from the coverage provided by the policy, and that plaintiff owes him no duty under the policy in question.

■ The remaining contention is whether, if Hoffman had had a right to coverage, it was forfeited by breach of the condition requiring written notice of the accident to be given by or for him to plaintiff as soon as practicable. The contention of the Attorney General seems to be that because Hoffman was of the opinion that the policy did not cover his liability for the accident—an opinion concurred in by his superior officer—his supposed mistake as to coverage was an excusable one for the reason that Hoffman's construction of the policy was identical with plaintiff's. We regard this contention as fallacious; but on the basis of this position the Attorney General urges that it "was not 'practicable' for the defendant to give

notice to the plaintiff under a policy that the plaintiff itself reads as not covering the accident." The requirements of the policy as to notice and the question as to whether the policy affords coverage are separate and distinct matters. Failure of the insured to comply with provisions with respect to notice justifies a disclaimer of liability on the part of the insurer, even though the insured would have been entitled to the protection had he complied with the notice provisions. It is admitted that plaintiff had no notice of the accident until some twenty-three months had elapsed. There is no evidence that during that period plaintiff had any knowledge of the accident or gave any consideration to the matter of coverage until it had disclaimed because of failure on the part of insured to comply with the policy condition as to notice. We think that the Attorney General is therefore not in a position to urge plaintiff's conclusion that he had no coverage as an excuse for the long delay in giving notice. Hoffman was fully cognizant of the fact of the accident, reported it to the investigating officer of the convoy, and again to his superior officer on arriving at the home armory in Chicago the evening of the day it occurred. He was served with a summons in the Grochowski case the following December and turned it over to his headquarters commander, but at no time did he report the accident to plaintiff. The obvious conclusion justified by the record is that it would have been practicable for Hoffman to give notice on the day following the accident.

The Attorney General contends that the delay in receiving notice was not prejudicial; he argues that officers of the National Guard, as well as his own office, investigated the occurrence, and he has put himself on record as being willing to turn over to the plaintiff the results of these investigations. In our opinion, this offer does not operate as a substitute for

timely notice. Plaintiff has a right to make its own investigation to determine the question of liability, the nature and extent of the injuries sustained by the Grochowskis, the location of the witnesses who might have had firsthand knowledge of the facts and other matters bearing on the defense of the claim. It is common knowledge that insurance companies have a staff of skilled investigators, and without timely notice of the accident the insurer is irreparably handicapped in making its investigation.

We are of the opinion that the court erred in denying the relief sought by plaintiff, and in holding that Hoffman's liability is covered by the policy and that plaintiff is obliged to assume Hoffman's defense in the suit brought by the Grochowskis. Judgment is therefore reversed, and the cause remanded with directions to enter a judgment in accordance with the prayer of plaintiff's complaint.

Judgment reversed, and cause remanded with directions.

BURKE, J., concurs.

BRYANT, J., specially concurring.
I concur only in the decision reached in the majority opinion in this case.

That concurrence is based solely upon the point relating to the sufficiency of the notice given by the insured to plaintiff. There is not the slightest doubt that the provisions of the insurance policy in regard to the giving of written notice were not complied with by the insured. The insurance company was prejudiced by the long delay in giving notice of the accident. The insurance company was entitled to make its customarily thorough and complete investigation within a reasonable time after the occurrence. Moreover, it was

entitled to determine the type of investigation it wanted to make, follow the leads it wished to develop, and exercise its discretion in protecting itself against a claim. This is the basis of my concurrence.

The principal purpose of this litigation after the question of notice was determined was to interpret and determine the meaning of certain words in the insurance policy. I find myself in complete disagreement with the interpretation of those words as set forth in the majority opinion. Consequently I find myself in disagreement with the opinion of the United States Court of Appeals for the Seventh Circuit as well as the United States District Court of the Northern District of Illinois, which in the case of Voelker v. The Travelers Indemnity Company, No. 12346, had the identical question before it and decided it in accordance with the majority opinion here.

However, this is a case of first impression in Illinois. In such matters the United States courts interpret and construe the law of the state, and, as there is no decision on the point by the Supreme Court of the State of Illinois, the construction and interpretation of the United States District Court and of the United States Circuit Court of Appeals is not binding, but is only persuasive. As this case was an action for a declaratory judgment brought for the specific purpose of interpreting the language in this insurance policy, I therefore feel compelled to express my dissent in the construction, although it is not necessary for the disposition of the litigation.

This contract of insurance covered first an automobile owned by the insured. As an additional inducement and coverage, by its terms it applied to the use by the spouse of the insured, and as to the insured's automobile or a substitute automobile, to any other person using such automobile with the permission

of either the insured or the spouse or to a non-owned automobile operated by the insured or his spouse. After these obligations had been assumed, the policy then provides an exception to the limits of these obligations, so far as it relates to non-owned automobiles, by saying the policy does not apply to any non-owned automobile, ". . . while used in the business or occupation of the named insured or spouse." All of the other exceptions are not applicable, and therefore it is submitted to this court upon the question of the construction of the words "while used in the business or occupation of the named insured."

There is no question that the automobile here involved was a non-owned automobile. The construction placed upon the words which are here in question by the majority opinion does violence to two of the fundamental rules of construction of insurance policies: (1) that words shall be given in the construction of such policies their common, ordinary, and usual meaning, when taken in context with the subject matter, and (2) that all ambiguous or doubtful language in insurance policies shall be construed in favor of the insured. On these two points our courts have spoken authoritatively. In Canadian Radium & Uranium Corp. v. Indemnity Ins. Co., 411 Ill. 325, at 332 the court said:

"The construction to be given insurance contracts, like other contracts, should be a natural and reasonable one. (Western and Southern Indemnity Co. v. Industrial Co., 366 Ill. 240; R. F. Conway Co. v. City of Chicago, 274 Ill. 369.) If the language is clear, the terms are to be taken and understood according to their plain, ordinary and popular sense. (Dempsey v. National Life and Accident Ins. Co., 404 Ill. 423; Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill. 576.) But because the insurer is the one who prepares the

contract, ambiguous or equivocal expressions whereby the insurer seeks to limit its liability will be construed most strongly against the insurer. Pioneer Life Ins. Co. v. Alliance Life Ins. Co., 374 Ill. 576; Lenkutis v. New York Life Ins. Co., 374 Ill. 136; Midwest Dairy Products Corp. v. Ohio Casualty Ins. Co., 356 Ill. 389."

The second rule is succinctly and more forcefully stated in Ziolkowski v. Continental Cas. Co., 365 Ill. 594, at 603, as follows:

"In case there is any ambiguity in the policy, the rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability thereunder, should be construed most favorably to the insured."

Another sound reason for the second rule is stated in Ferry v. National Motor Underwriters, 244 Ill. App. 241, as follows:

"The policy of insurance should not be so framed as to be susceptible of one construction in the hands of the soliciting agent, and of quite a different one in the hands of the adjuster. Travelers' Ins. Co. v. Dunlap, 160 Ill. 642–647."

The principal consideration here is the meaning of the words used in the exclusion clause in regard to non-owned automobiles. The meanings of the word business cover a wide spectrum. At one end is the idea that, if you are doing something, you are busy, and what you are doing is your business; and if you are doing something, you are occupied, and what you are doing is your occupation. This was logically argued in the insurance company's brief as follows:

"It is difficult to see how an assured under an automobile liability policy, could drive his own or any other automobile without being engaged in the business or occupation of operating it. And this is the connotation of these words as used in the Allstate policy."

328

It is fearsome to contemplate the number of businesses or occupations each of us have from dawn to dawn under that interpretation. But the pot at that end of the rainbow was rudely shattered, when it was pointed out that that interpretation of this clause would completely destroy any responsibility of the company for a non-owned automobile operated by the insured. Thus that language in the insurance policy in regard to such obligation would be merely another come-on to sell.

At the other end of the spectrum is the finding of the court in the order below that the insured "was not engaged in any business or occupation of his own," and was not excluded under the terms of the policy. That would seem to infer that, because the insured worked for a salary, he did not have a business or occupation. Equally unreasonable is the reference in the majority opinion to the suggestion that, because the insured was employed as an auto mechanic, he could have no other business or occupation.

Between these two extremes lies the usual and ordinary meaning of these words, when used in this context. Webster's New International Dictionary, Unabridged, gives the following definition of occupation:

"That which occupies or engages, the time and attention; the principal business of one's life; vocation; business."

It gives as synonyms employment, pursuit, calling, vocation. This idea, that a man's occupation is the principal business of his life, has found approval in the Supreme Court of the State of Illinois. In Union Mutual Accident Ass'n v. Frohard, 134 Ill. 228, at 234, the court said:

"It would be unreasonable and absurd to hold that the merchant who at one time measured a few bushels of grain, at another hung a few rolls of wall paper

329

upon his own premises, at another drove a team of horses in a carriage or wagon, and at still another rowed a skiff for exercise or recreation, became, within the true intent and meaning of these by-laws, at these several times, a grain measurer, a paper hanger, a teamster, and a boatman, respectively. The word 'occupation,' as found in these by-laws, must be held to have reference to the vocation, profession, trade or calling which the assured is engaged in for hire or for profit, and not as precluding him from the performance of acts and duties which are simply incidents connected with the daily life of men in any or all occupations, or from engaging in mere acts of exercise, diversion or recreation."

In Scott v. Freeport Motor Casualty Co., 392 Ill. 332, the Frohard case was discussed. It was pointed out that there the assured, a hardware merchant, had not changed his occupation by going on a hunting trip in the course of which he was injured. The court further said:

"In 46 C.J. 897, the substance of the definition of the word 'occupation' given in the Frohard case is adopted. It concludes, 'Thus it has been said that occasional acts will not constitute an occupation.' Borovicka v. Bankers Indemnity Ins. Co. 289 Ill. App. 51; Hess v. Preferred Mason Mut. Accident Ass'n, 112 Mich. 196, 70 N. W. 460; Holliday v. American Mut. Accident Ass'n, 103 Iowa 178, 72 N. W. 448; North America Life & Accident Ins. Co. v. Burroughs, 69 Pa. St. 43.

"In Everson v. General Fire & Life Assur. Corp., 202 Mass. 169, 88 N. E. 658, the court reviewed a number of cases and concluded the word 'occupation' as employed in insurance policies was a term of broad significance and 'includes the trade, calling, profes-

sion, office, employment or business by which one usually gets his living. It is not incidental, recreatory or even necessary suspension of the performance of regular duty, which constitutes a change of occupation. Vacation expedients differ almost as widely as the temperaments of men. The occasional recurrence for diversion or recuperation to tilling the soil does not convert the business or professional man into a farmer. The statesman felling trees for exercise could not thereby be classified properly as a wood chopper by occupation. Where the nature of the employment is narrow and classification is strict and closely subdivided, change from one class of compensated work to another may effect a change, . . . . But where comprehensive phraseology is used, a slight variation from daily routine does not rise to the dignity of a change of the main purpose of one's business activity.' "

Both of the above cases relate to insurance liability.

The most appropriate dictionary definition of the word business is "that which busies or engages time, attention or labor as a principal serious concern or interest." The Illinois judicial interpretations of the term business are not so numerous or explicit as the ones previously cited in regard to occupation. However there is clear implication in cases not involving insurance that, when the word business is taken in its usual and ordinary sense, it means a man's principal endeavor. In the case of Svithiod Singing Club v. McKibbin, 381 Ill. 194, a case which involved the retailers occupational tax, it was said on p. 198:

"It follows that the word 'business,' as used in the act, is to be construed in the usual or popular meaning of the word, unless, as stated, the text or purpose of the act varies that meaning."

331

Then on p. 199 the court further states:

"Webster defines 'business' as 'any particular occupation or employment, habitually engaged in, especially for livelihood or gain.'"

And in Walsh v. Industrial Comm., 345 Ill. 366, a case which involved the Workmen's Compensation Act, the court said on p. 369:

"The term 'business' in common parlance, means an employment which occupies a substantial portion of the time and attention of one engaged in it."

In People v. Maggi, 378 Ill. 595, which involved the Minimum Wage Act for women, it was said on p. 598:

"The word business is defined in Webster's Dictionary as 'That which busies, or engages time, attention or labor as a principal serious concern or interest. Specif.: a. Constant employment; regular occupation; work; as the business of life, business before pleasure. b. Any particular occupation or employment habitually engaged in, esp. for livelihood or gain.'"

These cases clearly indicate that the Supreme Court in statutory construction involving the word business has held, first, that the word business must be construed in its ordinary sense, and that, when it is so construed, it refers to the principal activities of an individual. Is there any reason for a different construction in a private insurance contract between a company and an insured?

It appears to me that the distinction which is here made relates to the difference between a man's vocations and his avocations. The dictionary says that a vocation is regular or appropriate employment, calling, occupation, profession. Avocation is defined as that which calls one away from one's regular employment or vocation, a subordinate occupation, especially one pursued with enjoyment, a hobby. From the distinction above made it is evident that the words "in

332

the business or occupation of the named insured" refer to a man's vocation and not to his avocation.

A man can have more than one occupation or business. A good example is the young man who works all day in the factory and goes to law school every night for three years. His occupation is both a factory worker and a student. Ten years later he practices law all day, and he and his wife decide to take a great books course at night. He is a lawyer. He is not a student. Business or occupation need not be single, nor need it be remunerative. A man who works all day as an auto mechanic and on Monday and Friday nights regularly bowls, has not changed or added a new occupation. The same application can be made to men who spend three or four afternoons a week on the golf course. They are still brokers or salesmen. Their business or occupation is not golf. A man who borrows another's car and drives three or four of his buddies to Canada for a fishing trip, has certainly not changed or added to his business or occupation. It is therefore evident that, whether a man's activities are his business or occupation is a question of intent and purpose, degree and proportion.

With these ideas in mind, let us look at our militiaman. Certainly a different situation exists between a militiaman's employment in time of peace and in time of war. Undoubtedly in time of war a man in the militia who devotes all his time to that enterprise has the occupation of a militiaman, and it is his business. It is the principal activity to which he devotes his life. What are the motives that control a young militiaman's activities in time of peace? First, he is probably influenced to join the militia because he thinks it is the most desirable way to comply with the regulations of the government in regard to compulsory military service. Secondly, his weekly drill nights are means of study and relaxation. His intent is compa-

rable to that of the lawyer who takes the great books course or the auto mechanic who goes bowling. The militiaman has not acquired a new occupation or business. Probably the third motive which influences a militiaman to join is the fact that the two weeks of training in the field has certain aspects of an outing without expense and with the companionship of men of his own age. When he drives a truck which he does not own for the transportation of himself and his buddies to and from camp, he is in a position analogous to the man who borrows a station wagon to drive himself and his friends on a fishing trip. Clearly it cannot be said that, when a young man joins the militia, he has taken upon himself a new principal occupation or business. The fact that, when a militiaman attends drill or goes to field maneuvers he receives a nominal pay does not make that drill or those maneuvers his principal occupation or business. The fact that the state has an obligation to maintain a militia and that the people who enlist are fulfilling that obligation does not in my opinion change the nature of their employment or principal activity and create a new occupation or business for the enlistee.

It is quite clear that the usual and ordinary meaning of the words business and occupation are not sufficient to cover the activity of our militiaman. It is an avocation, not a vocation, and therefore by that primary rule the language of exception does not affect the instant person.

However, if one should differ in regard to that point, surely it must be said that the meanings of the words in the policy of the insured relating to occupation and business are at least ambiguous, and in accordance with the primary construction of insurance policies they must be construed in favor of the insured. The United States Court of Appeals in the Voelker case used the following language:

334

"While the question of defendant's freedom from liability under the exclusion clauses is not free from doubt, we are of the view that the trial court reached the right conclusion. Certainly we are not convinced to the contrary."

It is difficult to reconcile this rule of construction and that language with the court's decision.