James S. MYERS, Individually and for his Wife, Harriet Myers, and as Natural Guardian and Next Friend of James Myers, a Minor, Plaintiff,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

GOVERNMENT EMPLOYEES INSUR- ANCE COMPANY, Third-Party Defendant.

Civ. A. No. 3–519.

United States District Court
N. D. Texas,
Dallas Division.

May 22, 1965.

**516**

Paul K. Hyde, of Hyde, Tucker, Gano & Easterling, Dallas, Tex., for James S. Myers.

Barefoot Sanders, U. S. Atty., and Kenneth J. Mighell, Asst. U. S. Atty., Dallas, Tex., for the United States of America.

Philip L. Kelton of Strasburger, Price, Kelton, Miller·& Martin, Dallas, Tex., for third-party defendant, Government Employees Insurance Company.

ESTES, Chief Judge.

Plaintiff, JAMES S. MYERS, individually and for his wife, HARRIET MYERS, and as natural guardian and next friend of his minor son, JAMES MYERS, originally brought this tort action against ELWOOD C. PUGH, alleging diversity of citizenship and jurisdictional amount. 28 U.S.C. § 1332(a) (1). Plaintiff claims damages for personal injuries to his wife and minor son and damages to his automobile resulting from a rear-end collision in Dallas, Texas, on October 14, 1962, between an automobile driven by his wife and an automobile owned and operated by Elwood C. Pugh, a civilian employee of the United States Air Force at Barksdale Air Force Base, Louisiana. Following a preliminary pretrial conference and motions by both Plaintiff and Pugh, the United States was substituted as the party defendant herein by Order of the Court on September 2, 1964. 28 U.S.C. §§ 2679(b) and 1346(b). This is now an action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), §§ 2671 et seq.

At the time of the accident, Pugh, en route under orders to Carswell Air Force Base, Fort Worth, Texas, and acting in the scope of his employment, was insured under "Family Automobile Policy" No. 6211996 issued by Government Employees Insurance Company (sometimes called the "insurance company") on November 14, 1961, and covering the period December 10, 1961 through December 10, 1962. The "Family Automobile Policy Declarations" listed Pugh's address as P. O. Box 304, Barksdale Air Force Base, Louisiana, and itemized a total premium of $42.25 for $25,000/$50,000/$10,000 insurance coverage. The "application of renewal," on which Pugh's coverage was renewed for the period December 10, 1962, through December 10, 1963, recites:

> "3. Days per week auto is driven to work     Average 4
>
> 4. One way distance to work     2 miles
>
> 5. Is auto used for business other than driving to or from work * * *     No"

The policy was in full force and effect at the time of the accident and, as here pertinent, obligated Government Employees Insurance Company:

> "To pay on behalf of the insured all *sums which the insured shall become legally obligated to pay* as damages * * * arising out of the ownership, maintenance or use of the * * automobile * * * and the *company shall defend* any suit * * * seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent, but the *company may make* such investigation and *settlement* of any claim or suit as it deems expedient." (Emphasis added)

The policy also contained an "omnibus clause" providing that the term "persons insured" included the named insured and "Any other person or organization legally responsible for the use of * * * [the] automobile. * * *"

The United States was granted leave at the preliminary pretrial conference to file a third-party complaint against Government Employees Insurance Company under Rule 14(a) F.R.Civ.P., alleging

that it is an additional "insured" under the above quoted "omnibus clause." Government Employees Insurance Company filed a Motion to Dismiss and Abate Suit, which motion was carried with the case in the interest of effective administration of justice.

After the final pretrial conference a compromise settlement was reached between all of the parties as to negligence and damages. Under the pleadings and stipulations, the only question remaining for determination by the Court is that of liability, if any, of the third-party defendant, Government Employees Insurance Company, to the United States.

The United States is not here claiming indemnity against the insurance company. See Gipson v. Shelley (E.D.Tenn., 1963), 219 F.Supp. 915; Grant v. United States (2 Cir., 1959), 271 F.2d 651. Under the policy itself, the insurer is liable only where the insured is liable. Instead, the United States seeks to hold the insurer on its policy on the theory that it, the national sovereign, is an additional "insured" under the policy. The crucial question, therefore, is one of interpretation of the private contract (policy) between the insurance company and its insured, viz: Was the United States intended to be included as an additional "insured" by the words, "any other person or organization"? [1]

In Rowley v. United States (D. Utah, 1956), 140 F.Supp. 295, 297, the Court withheld approval of a tendered pro rata settlement of a tort action against the United States (under the Federal Tort Claims Act) and American Aviation and General Insurance Company. In holding that the insurance policy insured the United States, the Court's opinion stated:

> "I have before me the policy. * * Mr. Colzani's occupation is noted as 'Insurance and U. S. Mail'. The purposes for which the automobile is to be used are expressed as 'business and pleasure'. * * * "

The Rowley case was followed in Irvin v. United States (D.S.Dak., 1957), 148 F.Supp. 25, 30, wherein the Court observed that:

> " * * * the name and address of the insured are given as 'Robert B. Troup, Colman, South Dakota,' and his occupation is listed as that of 'Rural Mail Carrier,' and his employer as 'U. S. Government.' The purposes for which the automobile is to be used are 'Business and Pleasure'. * * * "

The legislative history of the 1961 amendments to the Federal Tort Claims Act (approved September 21, 1961; effective March 24, 1962) reflects that at the time the Rowley and Irvin cases were decided, Congress considered that the Federal Tort Claims Act " * * * in effect gives general consent for tort suits against the Government itself brought in Federal courts * * * [it] does not, in its present form, afford to the Government employee relief or protection against damages assessed against him personally when sued in a State court. While Government employees driving motor vehicles in the course of their official duties may protect themselves from liability by obtaining insurance, they must pay for it out of their own pockets."

1. In the construction of statutory language, it has been held that the word "person" includes the United States. Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259 (1893); State of Ohio v. Helvering, 292 U.S. 360, 370, 54 S.Ct. 725, 78 L.Ed. 1307 (1934); Helvering v. Stockholms, etc., Bank, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211 (1934). Also, the United States has been recognized as a "person" within the meaning of Rule 14 F.R.Civ.P. permitting service upon " * * * a person not a party to the action. * * * " United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). However, in each of these instances it was the predominant intention of Congress which governed.

In a situation analogous to the one present in this case, the New Hampshire Supreme Court has held that the government is not a "person or organization." Farm Bureau Mutual Automobile Insurance Co. v. Manson (1947), 94 N.H. 389, 54 A.2d 580, 583. Compare United States v. Maryland Casualty Company (5 Cir., 1963), 323 F.2d 473.

**518**

1961 U.S. Code Congressional and Administrative News, p. 2789.

The work-connected liability hazards of government employees prompted a number of legislative proposals such as indemnification of drivers or procurement by the government, at its expense, of liability insurance covering its employees. Both of the mentioned proposals were abandoned due to anticipated difficulties in administration and excessive expense. The legislative history of the 1961 amendments further reflects that Congress considered that:

"* * * The increasing use of motor transport by the Federal Government as a part of its day-to-day operations, coupled with the augmented costs of public liability and property damage insurance coverage available to Federal employees to protect themselves in the operation of vehicles on Government business, has imposed a heavy financial burden on the large number of such employees whose work entails their driving of motor vehicles on behalf of the Government and who, as a matter of prudent self-protection, purchase insurance to protect themselves from personal liability. * * * It is not, therefore, surprising that they complain because of their assuming what they regard as an inequitable burden, and one of which they feel that the Government, as their employer, should relieve them.";

and that:

"* * * The enactment of this amendment for the protection of the Government driver would afford the relief desired by him, for there would be *then no point in his spending his own funds to take out liability insurance to protect him* while operating motor vehicles in the scope of his employment for the Government. * * *" (Emphasis added.)

1961 U.S. Code Congressional and Administrative News, pp. 2789–2791. The purpose of the amendments was expressly "* * * to provide a method for the assumption by the Federal Government of responsibility for claims for damages against its employees arising from the operation by them of vehicles in the scope of their Government employment." 1961 U.S. Code Congressional and Administrative News, p. 2785. Under these amendments [28 U.S.C. § 2679(b), (c), (d), (e)], the remedy against the government in a case appropriately under the Federal Tort Claims Act is the sole remedy, excluding suits against employees in their individual capacity. The government has no right of indemnity against its employee—here, Pugh, the named insured in the policy. Gilman v. United States (9 Cir., 1953), 206 F.2d 846, aff'd (1954), 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898. The specific purpose of protecting Government drivers against suits was implemented by the provisions of the amendments (1) for notice by the employee to the Government, (2) that the attorney general "shall defend", (3) for removal of any action instituted in state courts and (4) authorizing the attorney general to settle claims.[2]

Both the Rowley and Irvin cases were decided approximately four years before the aforesaid amendments to the Federal Tort Claims Act. In a suit like the instant case after the amendments, Gipson v. Shelley (E.D.Tenn., 1963), 219 F.Supp. 915, Judge Neese refused to permit joinder of Government Employees Insurance Company, the same company here involved, as a third-party defendant under Rule 14(a) F.R.Civ.P., stating:

"* * * Government Employees Insurance Company is not, and cannot be, liable to the defendant Shelley [the insured government employee], in whole or in part. As stated, these plaintiffs' claims by statute now lie against the United States solely. * * *

2. Under the insurance policy in question the duty to defend and right to settle rest in the insurance company.

"While this appears to be a case of first impression since the enactment of the 1961 statute (28 U.S.C. § 2679), it is clear to this Court that the insulation of the defendant Shelley from liability herein also serves to insulate the Government Employees Insurance Company. * * "

No appellate court has spoken on this problem. A number of district courts have applied the Rowley and Irvin decisions.[3]

Such cases were predicated on express findings of "intent" to insure the United States and dealt with policies specifying the employees' occupation (such as "mail carrier") and providing coverage for "business" use of the covered automobile. No case cited has held an insurance company liable to the government in the absence of express coverage for "business". And it does not appear from any of the opinions holding the insurance company liable that the insured employees' premiums were reduced.

■ In the instant case, even construing the policy, as we must, strictly against the insurer [Neas v. Home Fire and Marine Insurance Co. of Cal., (N.D. Tex., 1955), 135 F.Supp. 205], it is obvious that it was the intention of the parties not to cover the United States. Indicative of this is the fact that Government Employees Insurance Company, after Congressional approval of the 1961 amendments to the Federal Tort Claims Act, issued a "Family Automobile Policy" to a Government employee, which policy significantly excluded either a job description or the word "business" in the coverage section. It has been stipulated that had the policy been written to include "business" use, Pugh would have paid a premium 40 per cent greater than that which the insurance company here received. In addition, prior to the 1961 amendments, if Pugh's automobile had been driven on business for the United States, Government Employees Insurance Company would have required that he be rated in the "business" class. Furthermore, the only prior case concerning a policy issued by Government Employees Insurance Company held that the United States had no cause of action against the company. Gipson, supra.

■ Congress could have expressly provided for indemnification of the United States by an employee's insurer. Failure to do so indicates a contrary intention. Girard Trust Co. v. United States, 270 U.S. 163, 169, 46 S.Ct. 229, 70 L.Ed. 524 (1926). Had it done so, the ultimate cost of protection would have been borne by the employees in direct derogation of the legislative history and purpose of the 1961 amendments to the Federal Tort Claims Act.

■ Since, under the 1961 amendments to the Federal Tort Claims Act, the insured federal employee is not "legally obligated" (liable) to Plaintiff Myers, the insurance company is not liable under its policy to the insured employee or to the Government as an additional insured.[4] This is no windfall for

3. Nistendirk v. McGee (W.D.Mo., 1963), 225 F.Supp. 883; Nistendirk v. United States v. M. F. A. Mutual Insurance Company (W.D.Mo., 1964), 225 F.Supp. 884; Vaughn v. United States v. Tennessee Farmers Mutual Insurance Company (W.D.Tenn., 1964), 225 F.Supp. 890; Patterson v. United States v. State Farm Mutual Automobile Insurance Company (E.D.Tenn., 1964), 233 F.Supp. 447; McCrary v. United States (E.D.Tenn., 1964), 235 F.Supp. 33. (Judge Neese, in a memorandum opinion, reaffirms the views expressed in Gipson v. Shelley, supra, but joins the other judges of the Eastern District of Tennessee in holding the insurance company liable "for the sake of uniformity" in the District); Barker v. United States (N.D.Ga., 1964), 233 F.Supp. 455; Gahagan v. State Farm Mutual Automobile Insurance Co. (W.D.La., 1964), 233 F.Supp. 171; Chatham v. United States v. National Insurance Underwriters (Civil Action No. 1972, Mid.D. Ga.—unreported—1964).

4. After the issuance of the policy in question the Texas Insurance Commission, on August 1, 1962, promulgated a standard endorsement excluding the United States as an "insured" and excluding from liability coverage any accident covered by the Federal Tort Claims Act. Of course,

the insurance company. It reduced the insured's premium 40 per cent because the policy did not include "business" risks, and the parties to the insurance contract knew the insured did not need, purchase or pay for "business" insurance because he was protected by the amended Federal Tort Claims Act from liability in carrying on the business of the Government.

The third-party defendant's Motion to Dismiss is therefore granted and judgment shall be entered accordingly.

The Court finds that the settlement as between the plaintiff and the United States is reasonable and proper and judgment shall be entered for the plaintiff against the United States.

The Court further finds that a reasonable fee for the attorney for the plaintiff would be 20 per cent of the amount of settlement, which fee is hereby allowed, to be paid out of, but not in addition to, the amount of settlement.

Dated and signed this 21st day of May, 1965.

such endorsement is no evidence of the intent of the contracting parties and does

not override the obvious intent of Congress in the 1961 amendments.